727 F.2d 1352
 Fed. Sec. L. Rep. P 91,487, 15 Fed. R. Evid. Serv. 428
In re GRAND JURY PROCEEDINGS.
 No. 83-1661.
 United States Court of Appeals,
Fourth Circuit.
 Argued Dec. 6, 1983.
Decided Feb. 24, 1984.
 
 Alvin H. Goldstein, Jr., San Francisco, Cal. (Goldstein & Phillips, San Francisco, Cal., on brief), for petitioner.
 Michael E. Winck, Asst. U.S. Atty., Charleston, W.Va. (David A. Faber, U.S. Atty., Charleston, W.Va., on brief), for respondent.
 Before RUSSELL and PHILLIPS, Circuit Judges, and HOFFMAN, Senior District Judge, for the Eastern District of Virginia, sitting by designation.
 DONALD RUSSELL, Circuit Judge:
 
 
 1
 The petitioner John Doe seeks a writ of mandamus requiring the vacation and reversal of an order of the Southern District of West Virginia directing him to testify concerning conversations between him and three individuals, Margolin, Kimball and Chernack pursuant to a subpoena issued by a duly convened grand jury of such district court and denying him access to the affidavit of the Internal Revenue Service [IRS] agent on whose testimony the Government relies to establish the "crime/fraud exception".[1] We deny the writ.
 
 
 2
 The petitioner is an attorney at law licensed to practice in the States of Massachusetts and California, with offices located in San Francisco. He specializes in business and securities law. In his professional capacity, he has been retained on a number of occasions by Margolin, who was engaged in the securities business in San Francisco. In late September, 1977, he was retained by Margolin in connection with a proposed private placement of limited partnership interests in the leasing of coal mining equipment. Under the proposed arrangement, Margolin was to market the partnership interests; Kimball was to handle the acquisition and/or leasing of mining equipment; and Chernack was to provide financial support. Incident to this employment, the petitioner met on September 28, 1977, with Margolin, Kimball and perhaps Chernack,[2] at Margolin's request, to discuss, the preparation of a prospectus to be used in the enlistment of investors in the private placement. Later, he had telephone and personal conversations with Kimball about the material to be included in the placement on one or two occasions. However, on October 13, 1977, little more than two weeks after the petitioner had been retained, he was instructed by Margolin to discontinue his services. From that date until the grand jury subpoena, the petitioner had no discussions, conversations or meetings with any of the participants about the aborted private placement.
 
 
 3
 On May 2, 1983, the petitioner was advised by the Government that he would be subpoenaed to testify before the grand jury investigating the 1977 proposed joint venture with reference to his conversations with Margolin, Kimball and Chernack. The petitioner immediately informed Margolin "and attempted [by letters addressed to each at what the petitioner, after inquiries, had ascertained was their addresses][3] to inform Messrs. Chernack and Kimball and their attorneys, that he had been subpoenaed to testify before the grand jury and requested each to inform him whether or not he was instructing John Doe to assert the attorney-client privilege as to communications in connection with the transactions in question." After being advised by the petitioner of the subpoena, Margolin expressly waived any attorney-client privilege in connection with any conference with the petitioner relating to the proposed venture. The petitioner, though, has received no answer from either Kimball or Chernack nor have his letters been returned to him by the postal authorities as undelivered.
 
 
 4
 The petitioner appeared before the grand jury as required by its subpoena and "asserted the attorney-client privilege with respect to all communications between himself and Messrs. Kimball and Chernack either individually, with each other, or in the presence of Mr. Margolin." The United States Attorney thereupon moved the district court to compel petitioner's testimony, contending (1) that Kimball and Chernack were not clients of the petitioner; (2) such communications as were made were not intended to be kept confidential; and (3) that, if the two were clients, the crime/fraud exception applied. In support of the third ground, the United States Attorney submitted the affidavit of the IRS agent John Bowen. A hearing on this motion was had by the District Judge. The petitioner demanded at the hearing access to the affidavit of the IRS agent, which had been examined in camera by the Judge. At the conclusion of the hearing, the District Judge granted the Government's motion on all grounds but denied petitioner's request for access to the Bowen affidavit.[4] The petitioner then began this mandamus proceeding.
 
 
 5
 It seems appropriate at the outset to observe that the Government does not identify the petitioner as a "target" of the grand jury investigation and, in the hearing in the district court, the United States Attorney represented to that court that "Mr. ... [is not] in any way ... involved in the perpetration of ... fraud." This circumstance, however, does not deny him standing to raise in behalf of his possible clients the objection that the proposed interrogation could be violative of the attorney-client privilege. The rule is that an attorney in a situation such as that of the petitioner is entitled to raise such privilege on behalf of his alleged client. Fisher v. United States, 425 U.S. 391, 402, n. 8, 96 S.Ct. 1569, 1577 n. 8, 48 L.Ed.2d 39 (1976). This general rule, well settled in federal law, is stated with emphasis in a special provision of the California Business & Professions Code, Sec. 6068(e), which applies to the petitioner as a member of the bar of that State and which obligates him expressly "to maintain inviolate the confidence, and at every peril to himself to preserve the secrets of his client." In instituting this proceeding, therefore, the petitioner is merely carrying out his obligation as a responsible member of the California bar and is not to be faulted in any way for his obedience to his professional responsibilities. The question posed, though, is not the propriety of petitioner's action in instituting this proceeding (which we regard as incontestable)[5] but the applicability of the attorney-client privilege to the facts as present in this case. The resolution of such question requires an examination of the scope and application of the privilege itself.
 
 
 6
 The attorney-client privilege as traditionally recognized at common law and as now incorporated in the Federal Rules of Evidence, controls in all federal judicial proceedings.[6] However, since the privilege "impedes [the] full and free discovery of the truth,"[7] and is "in derogation of the public's 'right to every man's evidence,' "[8] it is not "favored" by federal courts.[9] Accordingly the privilege is to be " 'strictly confined within the narrowest possible limits consistent with the logic of its principle.' "[10] Consonant with this policy, the privilege applies only when the person claiming the privilege has as a client consulted an attorney for the purpose of securing a legal opinion or services and not "for the purpose of committing a crime or tort" and in connection with that consultation has communicated information which was intended to be kept confidential. While, as is seen, the primary requirement, one which has been often characterized as "the essence" of the privilege, is that the communication was intended to be confidential, or, to use the language of one recent decision, was intended " 'to be held in the breast of [his] lawyer.' "[11] See McCormick, Evidence, Sec. 91, pp. 187-88 (Cleary ed. 1972):
 
 
 7
 "It is of the essence of the privilege that it is limited to those communications which the client either expressly made confidential or which he could reasonably assume under the circumstances would be understood by the attorney as so intended."
 
 
 8
 And we have adopted this view in United States v. Jones, 696 F.2d 1069 (4th Cir.1982) that the "essence" of the privilege is the protection of what was "expressly made confidential" or should have been "reasonably assume[d] ... by the attorney as so intended." In determining whether it was to be reasonably "assume[d] that confidentiality was intended," it is the unquestioned rule that the mere relationship of attorney-client does not warrant a presumption of confidentiality.
 
 
 9
 As McCormick put it: "A mere showing that the communication was from client to attorney does not suffice, but the circumstances indicating the intention of secrecy must appear." Sec. 91 at pp. 187-88.[12] In fact, so strong is this requirement of confidentiality that it has been held that the privilege may be lost "even if the disclosure is inadvertent" such as in some circumstances "eavesdroppers," and again, where if the privileged communication consisted of "privileged documents," the party did not "take reasonable steps to insure and maintain [their] confidentiality." Suburban Sew 'n Sweep, Inc. v. Swiss-Bernina, Inc., 91 F.R.D. 254, 258-59 (N.D.Ill.1981). See also, In Re Horowitz, 482 F.2d 72, 82 (2d Cir.), cert. denied, 414 U.S. 867, 94 S.Ct. 64, 38 L.Ed.2d 86 (1973) in which Judge Friendly declared: "It is not asking too much to insist that if a client wishes to preserve the privilege under such circumstances, he must take some affirmative action to preserve confidentiality," adding in a footnote: "Taking or failing to take precautions may be considered as bearing on intent" to preserve confidentiality. In particular, courts have consistently "refused to apply the privilege to information that the client intends his attorney to impart to others ...," or which the client intends shall be published or made known to others. United States v. Pipkins, 528 F.2d 559, 563 (5th Cir.), cert. denied, 426 U.S. 952, 96 S.Ct. 3177, 49 L.Ed.2d 1191 (1976); United States v. Cote, 456 F.2d 142, 144 (8th Cir.1972); Colton v. United States, 306 F.2d 633, 638 (2d Cir.1962), cert. denied, 371 U.S. 951, 83 S.Ct. 505, 9 L.Ed.2d 499 (1963); United States v. Tellier, 255 F.2d 441, 447 (2d Cir.), cert. denied, 358 U.S. 821, 79 S.Ct. 33, 3 L.Ed.2d 62 (1958); Wilcoxon v. United States, 231 F.2d 384, 386 (10th Cir.), cert. denied, 351 U.S. 943, 76 S.Ct. 834, 100 L.Ed. 1469 (1956) ("In order to be privileged, a communication must be made in confidence of the relationship and under circumstances from which it may reasonably be presumed that it will remain in confidence. The protection does not extend to a communication which cannot properly be termed the subject of a confidential disclosure. And a statement or communication made by a client to his attorney with the intent and purpose that it be communicated to others is not privileged.") Nor is the loss of the privilege confined to "the particular words used to express the communication's content" but extends "to the substance of a communication," since the disclosure of " 'any significant part' of a communication waives the privilege" and requires the attorney to disclose "the details underlying the data which was to be published. United States v. Cote, 456 F.2d at 145.
 
 
 10
 United States v. Jones, supra, is an excellent illustration of the rule that the privilege does not apply to the situation where it is the intention or understanding of the client that the communication is to be made known to others, either in the form of an offering brochure or income tax returns. In that case, the targets of a grand jury investigation were several individuals and entities who had promoted and sold a tax shelter scheme involving coal leases, a venture very similar to that involved here. The venturers had consulted three attorneys for purposes of securing an opinion on the taxability of such participations. This legal tax opinion was to be used in soliciting investors in the venture. All the attorneys were subpoenaed to testify about their conferences and the information supplied them during those conferences by the venturers; two of the attorneys were required in addition, under subpoenas duces tecum, to produce various documents. The venturers moved to quash all subpoenas, claiming immunity under the attorney-client privilege. The district court denied the motion, finding that the privilege did not apply under the facts of the case. On appeal that decision was affirmed. In so ruling this Court said (696 F.2d at 1072):
 
 
 11
 "Any disclosure inconsistent with maintaining the confidential nature of the attorney-client relationship waives the attorney-client privilege. Any voluntary disclosure by the client to a third party waives the privilege not only as to the specific communication disclosed, but often as to all other communications relating to the same subject matter....
 
 
 12
 "Upon reviewing the record, we doubt that the appellants have established that the alleged privileged communications fall within the scope of the attorney-client privilege."
 
 
 13
 In Jones, we cited with approval United States v. Cote, supra, 456 F.2d 142, which in turn, cited with approval and relied on United States v. Tellier, supra, 255 F.2d 441. The cases of Jones and Cote arose out of claims to the attorney-client privilege relating to information supplied by the defendants to attorneys retained to assist in preparing the defendant's tax return or a stock or partnership offering prospectus. In all of the cases the claims of privilege were dismissed. In its opinion sustaining such dismissal, the Court in Tellier said (255 F.2d at 447:
 
 
 14
 "It is of the essence of the attorney-client privilege that it is limited to those communications which are intended to be confidential. 'The moment confidence ceases,' said Lord Eldon, 'privilege ceases.' Parkhurst v. Lowten, 2 Swanst. 194, 216 (1819). Consult 8 Wigmore on Evidence Secs. 2311-2316 (3d ed. 1949). Thus it is well established that communications between an attorney and his client, though made privately, are not privileged if it was understood that the information communicated in the conversation was to be conveyed to others."
 
 
 15
 It is true that in both Cote and Jones, the venturers had later actually published the opinion prepared by the attorneys (Jones ) or filed the tax return prepared by the attorney (Cote ). The parties in this venture, though originally intending to publish, had abandoned the project before any publication was actually made. In this circumstance this case is similar to Tellier. In Tellier, the defendant (Tellier) was the head of an underwriting firm. He was engaged to raise funds through a public offering on behalf of an independent telephone and electric power system in Alaska. He (Tellier) employed an attorney, Cahn, to handle the processing of such offering before the Securities & Exchange Commission. At least two issues of debentures were marketed before a third issue was proposed by Tellier. Cahn warned Tellier against such issue, describing it at this point as a "Ponzi" scheme. It was agreed that Cahn would write a letter addressed to Tellier but with copies to two others expressing his opinion. All the letters, however, were sent to Tellier, and there was no evidence he ever mailed the letters to the others. The venture thereafter filed in bankruptcy and Tellier, along with certain officers of the corporation, was indicted for security fraud. At the trial, the primary witness against Tellier was the attorney, Cahn. Tellier objected to Cahn's testimony of his warning to Tellier in connection with the proposed third debenture issue, contending that the discussion "was intended as a confidential communication between an attorney and his client concerning the legal affairs of the client" and thus within the attorney-client privilege. The Court, in sustaining a denial of the objection, said (255 F.2d at 447):
 
 
 16
 "We conclude that Cahn's advice to Tellier was not privileged from disclosure at the trial, for, under the circumstances presented in the record, it is clear that this advice was not understood by either Cahn or Tellier to be confidential. The evidence establishes that Tellier expected Cahn to prepare a letter which was to set forth Cahn's objections to the issuance of additional debentures and which was to be forwarded to Proctor and Jones for their enlightenment ....
 
 
 17
 "The fact that the copies of this letter prepared for them may never have been sent by Tellier to Proctor and Jones is of no relevance."
 
 
 18
 Similarly, here, it is irrelevant that no prospectus was ever actually issued in this case. The significant fact is that the information given the petitioner was to assist in preparing such prospectus which was to be published to others and was not intended to be kept in confidence. That is the critical circumstance, to wit, the absence of any intent that the information was to be kept confidential. Remembering that the privilege itself is not "favored" and is to be "strictly confined within the narrowest possible limits," we have no difficulty in concluding under the admitted facts of this case that all information given the petitioner by any of the joint venturers connected with the subject-matter of the proposed issuance of participations is without the protection of the attorney-client privilege.
 
 
 19
 Since we find the privilege does not exist in this case because confidentiality was not intended, it is unnecessary to consider the other grounds on which the district court rested its decision. Neither do we find it necessary to consider whether Kimball and Chernack have, by their failure to respond to the petitioner's request for instruction, waived any right to assert the attorney-client privilege.
 
 
 20
 In conclusion, we repeat again that the petitioner has acted with becoming respect for his obligation as an attorney in this matter and we find he has fully discharged his responsibility to Kimball and Chernack, whether they be his clients or not. He has given notice to them by the best means available to him, of his situation. They apparently received that notice for his letters to them have not been returned. Presumably this inaction on their part could be construed as a waiver of the privilege by them. As we have said, however, we choose to rest our decision on the absence of an intention that the communications with the petitioner should be confidential as a basis for denial of the writ.
 
 
 21
 The petition for a writ of mandamus is denied and judgment below is affirmed.
 
 
 
 [1]
 Apparently the petitioner has chosen to use mandamus as his procedure for reviewing the ruling of the district court, since he presumably assumed that an appeal will not lie from a denial of a claim of privilege by a witness before a grand jury. However, there is authority for such right of appeal in a situation where the witness who is not the target of the grand jury investigation is permitted to intervene. The right of appeal by such third-party is stated to be an exception to the general rule. The rationale for such exception is thus summarized in In re Grand Jury Proceedings, 563 F.2d 577, 580 (3d Cir.1977):
 "Reasoning pragmatically that a witness will not usually undergo the penalties of contempt in order to preserve someone else's privilege, the courts permit appeal by an intervenor without the necessity of a sentence for contempt."
 See, also, United States v. Nixon, 418 U.S. 683, 691, 94 S.Ct. 3090, 3099, 41 L.Ed.2d 1039 (1974).
 
 
 [2]
 It is said that Chernack takes the position he was not present on the occasion. The petitioner, however, assumes Chernack was present. We indicate the tentativeness of Chernack's attendance at the conference
 
 
 [3]
 The addresses to which the petitioner addressed these letters were those the Government advised him and reaffirmed in this Court was what according to its best information, was their addresses
 
 
 [4]
 Since we do not find occasion to decide the claim by the Government of the applicability of the "crime/fraud" exception to the attorney-client privilege as asserted by the petitioner, the motion by the petitioner to be given access to the affidavit of IRS agent Bowen becomes moot
 
 
 [5]
 In McCormick, Evidence, Sec. 92, pp. 193-94 (Cleary ed. 1972), the writer says:
 "It seems that, unless in a case of flagrant disregard of the law by the judge, the lawyer's duty is merely to present his view that the testimony is privileged, and if the judge rules otherwise, to submit to his decision."
 This procedure, as suggested by Professor McCormick, seems particularly appropriate in this case, where, as here, counsel has given notice in the regular way presumably to the possible clients and has been favored with no expression of interest by them.
 
 
 [6]
 Rule 501, Fed.R.Evid., provides in part:
 "Except as otherwise required by the Constitution of the United States or provided by Act of Congress or in rules prescribed by the Supreme Court pursuant to statutory authority, the privilege of a witness, person, government, State, or political subdivision thereof shall be governed by the principles of the common law as they may be interpreted by the courts of the United States in the light of reason and experience."
 See also, Fisher v. United States, 425 U.S., at 402, n. 8, 96 S.Ct. at 1577; Wm. T. Thompson v. General Nutrition Corp., 671 F.2d 100, 104 (3d Cir.1982); United States v. Krol, 374 F.2d 776, 778 (7th Cir.1967), cert. denied, 389 U.S. 835, 88 S.Ct. 46, 19 L.Ed.2d 97.
 
 
 [7]
 Weil v. Investment/Indicators, Research & Management, 647 F.2d 18, 24 (9th Cir.1981)
 
 
 [8]
 In Re Horowitz, 482 F.2d 72, 81 (2d Cir.1973), cert. denied, 414 U.S. 867, 94 S.Ct. 64, 38 L.Ed.2d 86
 
 
 [9]
 Herbert v. Lando, 441 U.S. 153, 175, 99 S.Ct. 1635, 1648, 60 L.Ed.2d 115 (1979)
 
 
 [10]
 In re Grand Jury Investigation, 599 F.2d 1224, 1235 (3d Cir.1979)
 
 
 [11]
 United States v. Weger, 709 F.2d 1151, 1154 (7th Cir.1983)
 
 
 [12]
 To the same effect: Hiltpold v. Stern, 82 A.2d 123, 127 (D.C.Mun.C.A.1951)