UNITED STATES of America, Appellee,

v.

(UNDER SEAL), Appellant.

In re GRAND JURY 83–2 JOHN DOE NO. 462.

UNITED STATES of America, Appellee,

v.

(UNDER SEAL), Appellant.

In re JOHN DOE NO. 462.

UNITED STATES of America, Appellee,

v.

(UNDER SEAL), Appellant.

In re JOHN DOE NO. 462.

Nos. 84–1508, 84–1627 and 84–1628.

United States Court of Appeals,
Fourth Circuit.

Argued July 11, 1984.
Decided Nov. 16, 1984.

John M. Dowd and Ralph A. Muoio, Washington, D.C. (Neil J. Welch, Jr., Heron, Burchette, Ruckert & Rothwell, Washington, D.C., on brief for John and Jane Doe; Bernard S. Bailor, Caplin & Drysdale, Chartered, Washington, D.C., on brief for third appellant Richard Roe).

Karen P. Tandy, Asst. U.S.Atty., (Elsie L. Munsell, U.S.Atty., Alexandria, Va., on brief), for appellee.

Before PHILLIPS, MURNAGHAN and ERVIN, Circuit Judges.

ERVIN, Circuit Judge:

■ The appellants [1] appeal from orders of the district court requiring their attorneys to produce documents over their attorneys' and the appellants' assertion of the attorney-client privilege.[2] A grand jury in the Eastern District of Virginia subpoenaed the documents as part of an ongoing investigation. The district court granted the appellants' motions to quash in part, but it required production of documents that it concluded did not reveal *confidential* client communications. We affirm in part and reverse in part.

## I.

Since the summer of 1983, the appellants have been targets of a grand jury investigation. In March and April of 1984, the grand jury issued two subpoenas *duces tecum* to Egbert Jonker, one of John Doe's tax attorneys, requesting the production of all records concerning John Doe and any business entities associated with him. Jonker explained to the federal agents who issued the subpoenas that John Doe was referred to him by James Pittleman, Esq. Pittleman had asked Jonkers, an expert in Netherlands Antilles tax law, to advise John Doe about the possibility of establishing a corporation in the Netherlands Antilles. Following a series of meetings with John Doe, Jonker prepared a proposed tax ruling and forwarded it to John Doe for his approval. After explaining this to the federal agents, Jonkers filed a motion to quash the subpoena as to four of the requested documents, including the tax ruling, and the Does intervened. Concluding that the documents were not created with an expectation of confidentiality, the district court denied the motion to quash.

The grand jury also issued subpoenas *duces tecum* to John Wisiackas, Esq., and James Pittleman, Esq., of Odin, Feldman & Pittleman, requesting them to produce all records relating to any transactions between the law firm and the appellants. The appellants, who filed motions to intervene and quash, identified *in camera* the documents they claimed were privileged. The district court granted in part the Does' motion to quash the subpoena as it applied to fourteen documents, but it required production of thirty-one documents because it concluded that the information contained in the documents either did not originate from these clients or was not intended by these clients to be kept in confidence. For the same reasons, the district court required Richard Roe to produce twenty-one documents but it granted his motion to quash the subpoena as it applied to over twenty of the documents.

## II.

■ The attorney-client privilege, which finds its roots in Roman law,[3] has long been recognized at common law. As modern society became increasingly complex, courts recognized that individuals would need to rely on experts to transact business involving legal problems. "[T]his necessity introduced with it the necessity of what the law hath very justly established, an inviolable secrecy to be observed by attorneys, in order to render it safe for clients to communicate to their attorneys all proper instructions...." Mounteney, B. in *Arnes-*

1. When it becomes necessary to distinguish among the three appellants, they will be designated as John Doe, Jane Doe, and Richard Roe.

2. Generally, one served with a subpoena may not appeal a denial of a motion to quash without first resisting the subpoena and being held in contempt. *Cobbledick v. United States,* 309 U.S. 323, 60 S.Ct. 540, 84 L.Ed. 783 (1940). However, when the one who files the motion to quash, or intervenes, is not the person to whom the subpoena is directed, and the movant or intervenor claims that production of the subpoenaed documents would violate his attorney-client privilege, the movant or intervenor may immediately appeal. *United States v. Jones,* 696 F.2d 1069, 1071 (4th Cir.1982).

3. *See* E. Cleary, *McCormick on Evidence* § 87 (2d edition 1972).

*ley v. Earl of Arglesea,* 17 How.St.Tr. 1225 (1743) quoted in 8 Wigmore, *Evidence* § 2291 (McNaughten Rev.1961). The privilege has become part of the specialized federal common law in this country[4] and protects the substance of communications made in confidence by a client to his attorney. *United States v. Kendrick,* 331 F.2d 110, 113 (4th Cir.1964) (en banc). Noting that the attorney-client privilege is the oldest of the privileges for confidential communications known to the common law, the Supreme Court recently reiterated that "[i]ts purpose is to encourage full and frank communication between attorneys and their clients and thereby promote broader public interests in the observance of law and administration of justice." *Upjohn Co. v. United States,* 449 U.S. 383, 389, 101 S.Ct. 677, 682, 66 L.Ed.2d 584 (1981).

██ Because the privilege protects the substance of communications, it may also be extended to protect communications by the lawyer to his client, agents, or superiors or to other lawyers in the case of joint representation, if those communications reveal confidential client communications. *See Brinton v. Department of State,* 636 F.2d 600, 603 (D.C. Cir.1980), *cert. denied,*

452 U.S. 905, 101 S.Ct. 3030, 69 L.Ed.2d 405 (1981) (the privilege applies to attorney-client communications originating from the attorney if the communication is based on confidential information provided by the client); *Continental Oil Co. v. United States,* 330 F.2d 347 (9th Cir.1964) (exchange of memoranda containing confidential client communications between counsel for several clients summoned before grand jury did not abrogate privilege attaching to the memoranda); 8 Wigmore, *Evidence* § 2301 (McNaughten Rev.1961) ("It has never been questioned that the privilege protects communications to the attorney's clerks, and his other agents ... for rendering his services."). *See generally* Supreme Court Standard 503(b).[5] However, the privilege protects only confidential client communications; that is, communications not intended to be disclosed to third persons other than in the course of rendering legal services to the client or transmitting the communications by reasonably necessary means. *See* Supreme Court Standard 503(a)(4).[6] We have recently said that

> the "essence" of the privilege is the protection of what was "expressly made confidential" or should have been "rea-

**4.** *Cf.* Fed.R.Evid. 501 ("the privilege of a witness ...—shall be governed by the principles of the common law as they may be interpreted by the courts of the United States in the light of reason and experience.")

**5.** Supreme Court Standard 503(b) states:

A client has a privilege to refuse to disclose and to prevent any other person from disclosing confidential communications made for the purpose of facilitating the rendition of professional legal services to the client, (1) between himself and his representative and his lawyer or his lawyer's representative, or (2) between his lawyer and the lawyer's representative, or (3) by him or his lawyer to a lawyer representing another in a matter of common interest, or (4) between representatives of the client or between the client and a representative of the client, or (5) between lawyers representing the client.

A "representative of the lawyer" is defined in Standard 503(a)(3) as "one employed to assist the lawyer in the rendition of professional legal services."

Although this Standard was not adopted by Congress to be part of the Federal Rules of

Evidence, it was promulgated by the Supreme Court and for the most part restated the common law as it then applied in the federal courts. It therefore provides a comprehensive guide to the federal common law of attorney-client privilege. *Cf. Citibank, N.A. v. Andros,* 666 F.2d 1192, 1195 and n.6 (8th Cir.1981) (court looks to Standard 503(c) "as a source for defining the federal common law of attorney-client privilege"). *See generally* 2 J. Weinstein and M. Berger, *Weinstein's Evidence* § 501 [03] at 501–28 (1982) ("The Standards ... are a convenient, comprehensive guide to the federal law of privilege as they now stand ... subject to considerably more flexibility in construction than is vouchsafed to courts construing formally adopted rules."). ·

**6.** Supreme Court Standard 503(a)(4) states:

A communication is "confidential" if not intended to be disclosed to third persons other than those to whom disclosure is in furtherance of the rendition of professional legal services to the client or those reasonably necessary for the transmission of the communication.

sonably assume[d] ... by the attorney as so intended." In determining whether it was to be reasonably "assume[d] that confidentiality was intended," it is the unquestioned rule that the mere relationship of attorney-client does not warrant a presumption of confidentiality.

*In Re Grand Jury Proceedings (John Doe)*, 727 F.2d 1352, 1356 (4th Cir.1984) (quoting *United States v. Jones*, 696 F.2d 1069 (4th Cir.1982)).

■ Although the privilege has a venerable pedigree and helps to ensure competent and complete legal services, it is nonetheless inconsistent with the general duty to disclose and impedes the investigation of the truth. *See NLRB v. Harvey*, 349 F.2d 900, 907 (4th Cir.1965). For this reason, we concluded in *In Re Grand Jury Proceedings* that the privilege must be strictly construed. 727 F.2d at 1355. With this principle in mind, we held that if a client communicates information to his attorney with the understanding that the information will be revealed to others, that information as well as " 'the details underlying the data which was to be published' " will not enjoy the privilege.[7] *In Re Grand Jury Proceedings*, 727 F.2d at 1356 (quoting *United States v. Cote*, 456 F.2d 142, 145 (8th Cir.1972)).

■ The difficult question is how to determine when a client intends or assumes that his communication will remain confidential. Although the existence of the attorney-client privilege does not alone raise a presumption of confidentiality, a layman does not expect his attorney to routinely reveal all that his client tells him. Rather than look to the existence of the attorney-client relationship or to the existence or

absence of a specific request for confidentiality, we must look to the services which the attorney has been employed to provide and determine if those services would reasonably be expected to entail the publication of the clients' communications. *See United States v. Jones*, 696 F.2d 1069, 1072–73 (4th Cir.1982) (doubtful that communications were confidential because the clients "retained the attorneys primarily for the commercial purpose of obtaining written tax opinions to include in their coal lease promotion brochures rather than for the purpose of obtaining legal advice for their own guidance as clients"). *Cf. Weinstein's Evidence* § 503(a)(4)[01] (" 'Intent [to maintain confidentiality] is inferable from the circumstances' ") (quoting the Advisory Committee Notes to Supreme Court Standard 503(a)(4).

This guideline is consistent with our decision in *In Re Grand Jury*. In that case we held that client communications to a lawyer relating to the preparation of a prospectus to be used in the enlistment of investors were not confidential even though the prospectus was never published because it "was to be published to others and was not intended to be kept in confidence." 727 F.2d at 1358. The clients had decided to publish a prospectus before approaching their attorney—thus, the attorney had been employed to convey information to third parties rather than to provide legal advice for the clients' own guidance.

The situation faced by this court in *In Re Grand Jury* is significantly different from the situation, posed by some of the documents in this case, in which a client employs an attorney to research the *possibility* of filing public papers.[8] Only when the

---

7. The details underlying the published data are the communications relating the data, the document, if any, to be published containing the data, all preliminary drafts of the document, and any attorney's notes containing material necessary to the preparation of the document. Copies of other documents, the contents of which were necessary to the preparation of the published document, will also lose the privilege. If any of the non-privileged documents contain client communications not directly related to the published data, those communications, if

otherwise privileged, must be removed by the reviewing court before the document may be produced.

8. We have not found a reported case in which the request to research the possibility of filing public papers was not considered privileged. None of the cases relied on in *In Re Grand Jury* so hold. *Cf. United States v. Jones*, 696 F.2d 1069, 1073 (4th Cir.1982) (privilege did not attach to tax law opinions where clients published portions of the opinions in promotional bro-

attorney has been authorized to perform services that demonstrate the client's intent to have his communications published will the client lose the right to assert the privilege as to the subject matter of those communications. This result will not be changed by a fortuity that prevents publication, such as in *In re Grand Jury* where the clients simply failed to stay in contact with their attorney, but it will be altered if the client subsequently decides not to publish his communications and tells his attorney before the release of any of the communications. In the latter situation, the attorney has counseled his client in a matter that the client was able to conclude, presumably through full and frank discussions with his attorney, should remain private. A contrary result might discourage clients who had contemplated a public course of action from fully informing their attorney of all relevant facts when the possibility of refraining from public action begins to dawn. *See Trammel v. United States*, 445 U.S. 40, 51, 100 S.Ct. 906, 912, 63 L.Ed.2d 186 (1980) ("the lawyer-client privilege rests on the need for the advocate and counselor to know all that relates to the client's reasons for seeking representation if the professional mission is to be carried out").

For example, a client may request his attorney to research the possibility of seeking a tax ruling from the Internal Revenue Service. Research results and further consultation may convince the client that his chances of obtaining a favorable ruling are not great enough to justify publicizing his accounting practices or business plans. The communications underlying the client's

request for research must be considered confidential or else the client will be discouraged from fully informing his lawyer of his business practices when he seeks to discover whether those practices are or will be clearly legal, clearly illegal, or in the gray area often found between the two poles when one researches federal tax law. *Cf. United States v. Cote*, 456 F.2d 142, 144–45 (8th Cir.1972) (attorney-client privilege attaching to information contained in accountant's workpapers waived by publishing the substance of that information in amended tax returns).

### III.

▮▮▮▮ We now apply these principles to the documents under review. The burden to demonstrate the applicability of the privilege rests with its proponent. *United States v. Jones*, 696 F.2d at 1072. In practical terms, this burden requires the proponent to explain, through *ex parte* submissions if necessary to maintain confidentiality, the significance or meaning of an otherwise cryptic document.

▮▮▮ We agree with the district court that the four documents that Egbert Jonker and John Doe claim are privileged (documents 1–4) do not exhibit the requisite confidentiality. The first three documents are letters concerning the proposed tax ruling that Jonker was employed to draft. The letters either do not reveal client communications or reveal communications on matters which were intended to be made public. The fourth document is the tax ruling itself. Although we do not know if it has been filed, it is a public document in charac-

chures); *United States v. Pipkins*, 528 F.2d 559, 563 (5th Cir.), *cert. denied*, 426 U.S. 952, 96 S.Ct. 3177, 49 L.Ed.2d 1191 (1976) (handwriting sample was not a *confidential* communication where the handwriting style had already been voluntarily disclosed to the government); *United States v. Cote*, 456 F.2d 142, 144–45 (8th Cir.1972) (attorney-client privilege attaching to information contained in accountant's workpapers waived by publishing the substance of that information in amended tax returns); *Colton v. United States*, 306 F.2d 633, 638 (2d Cir.1962), *cert. denied*, 371 U.S. 951, 83 S.Ct. 505, 9 L.Ed.2d 499 (1963) (information transmitted to attorney

for inclusion in a tax return not privileged) (dictum); *United States v. Tellier*, 255 F.2d 441, 447 (2nd Cir.), *cert. denied*, 358 U.S. 821, 79 S.Ct. 33, 3 L.Ed.2d 62 (1958) (communications not privileged where client expected attorney to prepare and the attorney did prepare a warning letter with the expressed intent of forwarding it to third persons); *Wilcoxon v. United States*, 231 F.2d 384, 386 (10th Cir.), *cert. denied*, 351 U.S. 943, 76 S.Ct. 834, 100 L.Ed. 1469 (1956) (directions client gave to attorney to ask certain questions were not privileged communications after the attorney asked the questions).

ter, and there is no evidence that the client instructed his attorney not to go forward with obtaining a tax ruling.

 Turning to the numerous documents in control of the law firm Odin, Feldman & Pittleman which the district court ordered produced, we agree that the following documents are not privileged because they do not reveal client communications or because the communications revealed could not reasonably have been expected to remain confidential:

Document 10139 relates to applying for a sales tax license number. John and Jane Doe assert that there is no evidence that the application was ever filed, but the burden is on them to demonstrate, through sworn affidavits from their attorneys or other convincing evidence, that they requested their attorneys not to file the applications. Similarly, documents 10140 and 10142 relate to a sales tax license and hence were made in contemplation of publication. Document 10143 relates to information on loans from a pension plan and to tax forms and does not exhibit the requisite confidentiality. Documents 10153 and 10158 duplicate 10143.

Document 10163 relates to proposed corporate purposes and stock ownership, and there is no evidence that these plans were explicitly abandoned. Document 10164 contains notes relating to a contemplated lease and again, John and Jane Doe have not demonstrated that the plan to lease was called off. Document 10174 duplicates 10163 and 10175 duplicates 10164. Document 10185 is a letter to John Doe from an attorney, but it does not reveal any client communications. Document 10187 is an inter-office attorney memo relating to the renegotiation of a first trust, and the communications that the document reveals could not reasonably be expected to remain confidential. Document 10196 duplicates 10143.

Documents 11222–11223 relate attorney's advice concerning a company bankruptcy. Nothing in the letter reveals any confidential matter that the Doe clients may have imparted to the attorney. Document 11224

duplicates 10185. Document 11225 is apparently a telephone message memo, and the copy submitted to the court is almost unintelligible. It seems to reveal nothing more than that John Doe called his attorney's office. If the illegible note reveals some confidential matter, the burden was on the Doe appellants to clarify that for the court. Document 11230 relates to a contemplated public action, the application for a land use tax assessment, and does not reveal any confidential matter. Similarly, documents 11279, 11303 and 11304 all relate to contemplated public actions and as such do not exhibit a reasonable expectation of confidentiality. Documents 11292 and 11305 duplicate 10143.

Document 11307 relates to loans from a corporation and its pension plan to John Doe. This is a public transaction, and the communications relating to it do not enjoy the privilege. Documents 11311 and 11314 relate to the same subject matter. Documents 11329 and 11330, consisting of an inter-office attorney memo concerning security notes for a deed of trust, reveal no confidential matters. Document 11333 contemplates a real estate transaction which would be a matter of public record. Document 11337 describes loans from a corporation and a personal loan secured by a note. It is not clear where the information came from, but assuming that it is derived from a client communication, the fact that the loans are secured by a note indicates that they were not meant to be kept confidential. Document 11340 relates to substantially the same matter. Documents 11437–11439 duplicate documents 1 and 4.

Document 11462 relates to the sale of land and contains no confidential information. Documents 020394–020396 relate to the purchase of a business and contain information that one would expect to eventually publicize. Documents 020433–34 duplicate 11222–11223. Documents 020097–100 also relate to the proposed purchase of another business and as such the information contained in the documents would rea-

sonably be expected to be imparted to a third party.

■ The remaining documents that we agree are not privileged relate to Richard Roe. Documents 260122, 260097, 260090, and 05002 are barely legible attorney's notes relating to public transactions. Document 233 relates to dam insurance and does not appear to contain client communications. Similarly, documents 290007, 290009, 290010, 410019–410020, 410089, 410110, and 4510056 do not appear to contain client communications. Documents 410090, 410075, 130102–6, 260123, 410051, and 410033 all contain attorney notes relating to public transactions. Document 260022 contains unintelligible notes. Document 260019 is a letter from an attorney to Richard Roe that refers to no confidential matters.

■ We believe that the district court erred, however, in concluding that documents 10156, 11214, and 11219 were not privileged. These documents all relate to a planned dissolution and as such the communications contained therein do not seem to relate to confidential matters. However, it is clear from the documents themselves that the client decided not to go forward with the dissolution. That decision creates a reasonable expectation that the discussions of the proposed dissolution, limited as they were to the client and his attorneys, would remain confidential. Hence these discussions are privileged.

We agree in part with the district court's refusal to quash the subpoena as to the remaining two documents. However, we believe that privileged communications within each document must be removed by the district court before the document is turned over to the government. The information revealed in paragraph two of 10141 might reasonably be expected to remain confidential even when an application for a Virginia sales tax license, which the document contemplates, is made. Document 10145, which discusses corporate authorization to establish a bank account and who may be signatories to that account, contains a conclusion in paragraph six which is undoubtedly based on client communications and which a client would reasonably expect to remain confidential.[9]

We note that several of the documents submitted to the court were so poorly copied as to be incomprehensible. With several others, it was impossible to determine with any degree of certainty what importance the documents had or whether they referred to contemplated public actions that the client later requested remain confidential. The proponents of the attorney-client privilege can only be hurt by such ambiguities because the burden is on them to demonstrate that the privilege applied.

## IV.

For the foregoing reasons, the judgment of the district court is affirmed in part, reversed in part and remanded in order for paragraph two of document 10141 and paragraph six of document 10145 to be removed before those documents are produced.

AFFIRMED IN PART, REVERSED IN PART AND REMANDED.

---

9. The district court also ordered production of other documents: 580091, 580092, 300071, and 410084–85. These documents, however, were turned over to the government by the law firm of Odin, Feldman & Pittleman on June 19, 1984, and are, therefore, not part of this appeal. Supplemental Brief of Appellants at 19 n.7.