Timothy W. O'LEARY, S. Dennis O'Leary, Pinedale Development Corporation, O'Leary Brothers Construction Company, Inc., O'Leary Brothers Realty, Inc., Plaintiffs,

v.

PURCELL COMPANY, INC., Pinehurst Inc., Malcolm McLean, McLean Securities, Inc., the Citibank, N.A., First National Bank of Chicago, the Chase Manhattan Bank, N.A., Crocker National Bank, Wells Fargo, N.A., Wachovia Bank and Trust Company, N.A., First Pennsylvania Bank, N.A., First National State Bank of New Jersey, Pinebrook, Inc., Pinehurst Receivables Associates, Inc., Pinehurst Sanitary Company, Village of Pinehurst, Victor H. Palmieri d/b/a Victor Palmieri Company and Elihu Fier, Defendants.

No. C–83–691–R.

United States District Court, M.D. North Carolina, Rockingham Division.

March 6, 1985.

Miriam J. Baer and Noel L. Allen, Raleigh, N.C., John B. Evans, Pinehurst, N.C., William O. Bittman and Gordon W. Hatheway, Jr., Washington, D.C., for plaintiffs.

John M. Murchison, Jr., J. Donnell Lassiter, and Myles E. Standish, Charlotte, N.C., for defendants Purcell Co., Inc., Malcolm McLean, McLean Securities, Inc., Victor H. Palmieri, etc.

R.M. Stockton, Jr., George L. Little, Jr., and Rodrick J. Enns, Winston-Salem, N.C., for defendants Pinehurst, Inc., The Citibank, N.A., First Nat. Bank of Chicago, The Chase Manhattan Bank, N.A., Crocker Nat. Bank, Wells Fargo, N.A., Wachovia Bank and Trust Co., First Pa. Bank, N.A., First Nat. State Bank of N.Y., Pinebrook, Inc., Pinehurst Receivables Associates, Pinehurst Sanitary Co., and Elihu Feir.

W. Lamont Brown, Southern Pines, N.C., for defendant Village of Pinehurst.

Jerome Kowalski, Lynne M. Barry, New York City, for defendants Pinehurst, Inc., The Citibank, N.A., First Nat. Bank of Chicago, the Chase Manhattan Bank, N.A., Wells Fargo, N.A., Wachovia Bank and Trust Co., First Pennsylvania Bank, N.A., First Nat. State Bank of N.Y., Pinebrook, Inc., Pinehurst Receivables Associates, Pinehurst Sanitary Co., and Elihu Feir.

## DISCOVERY ORDER

PAUL TREVOR SHARP, United States Magistrate.

This matter is before the Court for a ruling on the motion of defendant Purcell Company, Inc. (Purcell) for a protective order, filed October 9, 1984. Counsel appeared at a hearing on the motion on December 14, 1984, at the United States Courthouse in Greensboro.

Purcell's motion was filed after plaintiffs' counsel attempted to depose John Goshorn, the former Mayor of Pinehurst, concerning the contents of an undated memorandum (Bowles Memorandum) written by Barbara Bowles, a former Assistant Secretary of Old Pinehurst,[1] to James Van Camp, an attorney who represented Old Pinehurst on various matters. At the deposition, Purcell's counsel raised the issue of attorney-client privilege with regard to the Bowles Memorandum and questioned plaintiffs' attorney as to the source of the document. Plaintiffs' attorney chose not to give information on how his client, Timothy O'Leary, obtained the document and indicated that he had similar documents of Old Pinehurst in his possession. The parties then discussed the situation with the Court by telephone. The Court ordered that the document not be used in discovery in the case until a ruling could be obtained on a fully briefed motion for protective order.

After defendant Purcell filed the motion for a protective order, plaintiffs responded with a Memorandum in Opposition, supplemented by affidavits of Timothy O'Leary and J. Jerry Slade (former President of Old Pinehurst). In addition to the Bowles Memorandum, the plaintiffs identified four other documents in their possession which contain potentially privileged communications.[2] The affidavits, which are discussed in detail below, assert that plaintiff Timothy O'Leary received copies of the documents from Jerry Slade after Slade left Old Pinehurst as president. The five identified documents include (1) the Bowles Memorandum; (2) a letter, dated May 9, 1979, from J. Donnell Lassiter, a member of the law firm of Kennedy, Covington, Lobdell & Hickman, to Jerry Slade; (3) a letter from Emil Frankel, an employee of the Victor Palmieri Company which managed assets of Old Pinehurst in 1979, to J. Donnell Lassiter dated February 29, 1980; (4) a letter from DeWitt Talmadge Scarborough, III, a member of the law firm of Van Camp, Gill & Crumpler, who were former counsel for Old Pinehurst, to Barbara Bowles, former Assistant Secretary of Old Pinehurst, dated October 2, 1981; and (5) a memorandum dated September 14, 1979 believed to have been prepared by the Kennedy, Covington law firm concerning incorporation of the Village of Pinehurst. The September 14 Memorandum was attached as an appendix to a market report and analysis prepared by Economic Research Associates.

Plaintiffs contend that the five documents identified above (and all other documents received by plaintiffs from Jerry Slade) are not subject to the attorney-client privilege because (1) Purcell lacks standing to assert privilege on behalf of Old Pinehurst; (2) they were not treated by Old Pinehurst as confidential; (3) any privilege which might have existed has been waived by Old Pinehurst; (4) no attorney-client privilege attached to the communications because they concerned advice and direction as to future wrong-doing in that defendants conspired to breach contracts, and violate the antitrust laws and the civil rights of the plaintiffs.

The New Pinehurst and National Bank defendants[3] have supported Purcell's mo-

1. Pinehurst, Incorporated ("Old Pinehurst") was a subsidiary of Purcell Company, Inc. until the corporations were merged on March 3, 1982 with Purcell as the surviving corporation. At the same time certain assets of Old Pinehurst were transferred to Pinehurst Inc. ("New Pinehurst"). Pinehurst Inc. later became Pinehurst Enterprises, Inc. Other defendants include the Village of Pinehurst and the Victor Palmieri Company, which managed assets of Old Pinehurst for periods of time in 1979 through 1980.

2. At oral argument plaintiffs' counsel stated that the "Old Pinehurst" documents had been interspersed with plaintiff O'Leary's own file doc-

uments and that there was no way to sort through plaintiffs' files and retrieve all specific documents which had come from Old Pinehurst.

3. The New Pinehurst defendants consist of Pinehurst Inc.; Pinebrook, Inc.; Pinehurst Receivables Associates, Inc.; Pinehurst Sanitary Company; and Elihu Fier.

The National Bank defendants consist of The Citibank, N.A.; First National Bank of Chicago; The Chase Manhattan Bank, N.A.; Crocker National Bank; Wells Fargo, N.A.; Wachovia Bank and Trust Company, N.A.; First Pennsylvania

tion for a protective order, contending that the five identified documents and other confidential marketing materials were wrongfully acquired by the plaintiffs. They urge that the Court extend the exclusionary rule, used in criminal cases to exclude evidence and information derived from illegal searches and seizures, to civil proceedings and bar the use in this litigation of any information derived from such materials.

## DISCUSSION

■■ Rule 26(b)(1) of the Federal Rules of Civil Procedure exempts from discovery materials which are privileged. Wigmore defines the essentials of the attorney-client privilege as follows:

(1) Where legal advice of any kind is sought (2) from a professional legal adviser in his capacity as such, (3) the communications relating to that purpose (4) made in confidence (5) by the client, (6) are at his instance permanently protected (7) from disclosure by himself or by the legal advisor, (8) except the protection be waived.

8 Wigmore, Evidence § 2292 (McNaughton Rev.1961). The primary requirement, one which is often characterized as the essence of the privilege, is that the communication was intended to be confidential—to be confined to the attorney-client relationship. *In re Grand Jury Proceedings*, 727 F.2d 1352, 1355 (4th Cir.1984). Since the privilege impedes the full and free disclosure of the truth, it is not favored by the federal courts and is strictly confined within its narrowest possible limits. *In re Grand Jury Proceedings, supra* at 1355. The burden of proving the existence of the privilege rests on the party asserting it. Wright & Miller 8 *Federal Practice and Procedure*, § 2016 (1970).

■■ The mere relationship of attorney-client does not warrant a presumption of confidentiality. *In re Grand Jury Proceedings, supra*, at 1356. Some courts have held that confidentiality is lost even when disclosure is inadvertent, as in the

case of "eavesdroppers," or when the parties fail to take reasonable steps to insure and maintain the confidentiality of privileged documents. *In re Grand Jury Proceedings, supra*, at 1356, citing *Suburban Sew 'n Sweep, Inc v. Swiss-Bernina, Inc.*, 91 F.R.D. 254, 258–59 (N.D.Ill.1981). *See also, In re Horowitz*, 482 F.2d 72, 82 (2nd Cir.), *cert. denied*, 414 U.S. 867, 94 S.Ct. 64, 38 L.Ed.2d 86 (1973). Failure to take reasonable precautions to preserve confidentiality may be considered as bearing on intent to preserve confidentiality and, consequently, the privilege. *In re Grand Jury Proceedings, supra,* at 1356.

■■ At the outset, the Court rejects plaintiffs' contention that defendant Purcell lacks standing to assert an attorney-client privilege with respect to the documents of Old Pinehurst. Old Pinehurst was a subsidiary of Purcell until March 3, 1982 when Old Pinehurst was merged into Purcell with Purcell as the surviving corporation. (*See*, Affidavit of Artis James, ¶ 4.) As the surviving corporation in the merger, Purcell by operation of law succeeded to all the rights, privileges, and powers of Old Pinehurst and thus has authority to assert privilege relating to the documents of Old Pinehurst. Nonetheless, considering the facts of this case in light of the legal standards set forth above, the Court finds that Purcell has failed to meet its burden to show the maintenance of confidentiality with respect to documents here in issue. Accordingly, the attorney-client privilege may not serve as a shield to use of the documents by plaintiffs, and Purcell's motion for a protective order must be denied.

Plaintiffs' version of their acquisition of the documents in issue is as follows. According to the O'Leary and Slade affidavits, plaintiff O'Leary was given the documents by J. Jerry Slade. Mr. Slade states that he was president of Old Pinehurst until February 2, 1982. According to his affidavit, on February 3–6 he returned to his former office, with the permission of Old Pinehurst and Purcell, to remove cop-

Bank, N.A.; and First National State Bank of   New Jersey.

ies of certain files held by him while he was an officer of Old Pinehurst. He states that a list of the files he removed was given to Barbara Bowles, Assistant Secretary of Old Pinehurst, and that no objection to removal of the documents or concerns regarding confidentiality were raised by anyone although his possession of the documents was well known. Nor was he ever requested to return the files. He states that on February 8, Ms. Bowles borrowed one of the files from his home at the request of Ed Coleman, whom he identifies as the new Chief Executive Officer of Old Pinehurst. Later, Mr. Slade became involved in the real estate business, including a business in which the O'Leary brothers held stock. Mr. Slade also occupied offices in the same building as Mr. O'Leary. According to plaintiff O'Leary's affidavit, in March of 1983 Mr. Slade brought a number of files from his home containing the documents at issue here and permitted the plaintiff O'Leary to review the files and to make copies of a number of them. Mr. O'Leary also states that he received a copy of the May 9, 1979 Lassiter letter (see page 3, above) from Dale Hamlin, who was at the time director of real estate operations for Old Pinehurst. According to the affidavits both Mr. Hamlin and Mr. Slade produced the documents for plaintiff O'Leary voluntarily and without remuneration.

Purcell asserts that the files were removed by Mr. Slade without authorization from any person at Old Pinehurst. In support of this contention Purcell has filed affidavits by Edward E. Coleman, Chief Executive Officer of Pinehurst Enterprises, Inc., formerly Pinehurst, Inc. (New Pinehurst); Artis James, President of defendant Purcell; and Barbara Bowles, former Assistant Secretary of Old Pinehurst. Mr. James asserts that Purcell and Old Pinehurst were parties to an Executive Management Agreement under which Purcell was expressly authorized to direct the executive personnel of Old Pinehurst and supervise day-to-day management of the Pinehurst project. Mr. James states that Mr. Slade reported to him and that he at no time authorized any employee to release internal corporate documents of Old Pinehurst to Mr. Slade. Ms. Bowles states that Mr. Slade never sought or received her permission to remove documents from Old Pinehurst and never gave her a list of the documents he removed. She states that in March of 1982, Mr. Coleman asked for a file which she informed him might be in the possession of Mr. Slade. At Mr. Coleman's instruction she called Mr. Slade and retrieved the file from him. Mr. Coleman states in his affidavit that he has never been an officer of Old Pinehurst and that in February of 1982 he was serving as consultant to the principal lenders of Old Pinehurst. As of March 1982, he was CEO of New Pinehurst. He recalls that in February of 1982 a file of Old Pinehurst that initially could not be located was found to be in the possession of Mr. Slade and was recovered from him.

Although many of the facts relating to plaintiffs' acquisition of the documents are disputed by the parties, several undisputed facts lead the Court to conclude that defendant Purcell and its corporate predecessor treated the documents here in issue so loosely that they should not be considered "confidential" for purposes of the attorney-client privilege. According to the affidavit of Mr. James, Ms. Bowles was an employee of Old Pinehurst until the merger on March 3, 1982. It is clear that Ms. Bowles, an employee and officer of Old Pinehurst under the supervision of defendant Purcell, knew that Mr. Slade had Old Pinehurst files. Despite this knowledge of on her part, *no* attempt was ever made to retrieve the files in Mr. Slade's possession—except for a single file apparently needed by New Pinehurst. Significantly, Mr. Coleman, CEO of New Pinehurst (a corporation entirely separate from Old Pinehurst) exercised dominance over the Old Pinehurst documents by ordering retrieval of one file from Mr. Slade. Defendants have shown no evidence of procedures or policies which were followed by Old Pinehurst or Purcell to insure the confidentiality of the documents. Mr. Slade states that he knew of no such policies. Indeed, it is clear that

New Pinehurst personnel had full access to the files. The attorney-client privilege may be lost when parties fail to take reasonable precautions to insure and maintain the confidentiality of attorney-client documents. *In re Grand Jury Proceedings, supra,* at 1356; *see* also *Suburban Sew 'n Sweep, Inc. v. Swiss-Bernina, Inc., supra,* at 257.[4] The Court concludes that this is such a case.[5]

■ In addition, independent grounds exist for finding that Purcell has waived any attorney-client privilege with respect to at least the Bowles Memorandum. In November 1984, counsel for Purcell voluntarily produced the Bowles Memorandum during document production in this litigation. Corporate counsel for defendant Purcell was present during the production and reviewed each document before producing it. The Bowles Memorandum was among the documents produced to plaintiffs. (*See,* John Evans Affidavit, ¶¶ 4–8.) Defendants contend that this production was inadvertent. However, substantial authority supports the proposition that voluntary production of a document during a Rule 34 procedure waives the attorney-client privilege. *See, Rockland Industries, Inc. v. Frank Kasmir Associates,* 470 F.Supp. 1176, 1181 (N.D.Texas 1979); *W.R. Grace & Co. v. Pullman, Inc.,* 446 F.Supp. 771, 775 (W.D.Okla.1976); *Underwater Storage, Inc. v. United States Rubber Co.,* 314 F.Supp. 546, 548–49 (D.D.C.1970). Furthermore, when a document is produced in discovery, courts are less stringent in requiring that the waiver be intentional. *See, Underwater Storage, Inc. v. United States Rubber Co., supra.* Waiver, as an intentional relinquishment of a right, does not require a *subjectively* intended act but may be made by implication. *See, Duplan Corporation v. Deering Millikan, Inc.,* 397 F.Supp. 1146, 1162 (D.S.C.1975).

Although some courts have found that in special circumstances inadvertent production does not amount to a binding waiver, the Court finds that such circumstances do not exist here. *See, Connecticut Mutual Life Insurance Co. v. Shields,* 18 F.R.D. 448, 451 (S.D.N.Y.1955); *Mendenhall v. Barber-Greene,* 531 F.Supp. 951, 954 (N.D. Ill.1982); and *Transamerica-Computer Co. v. International Business Machines Corporation,* 573 F.2d 646 (9th Cir.1978). Here, defendant Purcell's in-house counsel had an opportunity to examine the documents to be produced, and extracted those documents to which he had objection or reservation. Defendant Purcell has waived any claim of attorney-client privilege with regard to the Bowles Memorandum.

The New Pinehurst and National Bank defendants have filed a memorandum in support of defendant Purcell's motion for a protective order. They contend that the Court should extend the exclusionary rule to civil discovery and bar use of any confidential marketing materials obtained by plaintiffs from Mr. Slade, as well as documents which might be subject to the attorney-client privilege. Defendants cite several cases where courts have held evidence illegally or improperly acquired by private individuals inadmissible in civil proceedings. *See, Penfield v. Venuti,* 589 F.Supp. 250 (D.Conn.1984); *Williams v. Williams,* 8 Ohio Misc. 156, 221 N.E.2d 622 (1966). However, the Court considers the argument to be inapplicable in this case. The primary purpose of the exclusionary rule is

---

**4.** This issue is sometimes approached in terms of waiver of the attorney-client privilege. However since the Court views the issue as a loss of confidentiality, we will not address whether waiver might be implied from defendants' failure to protect the privilege by maintaining the confidentiality of the documents. *See, Suburban Sew 'n Sweep, Inc. v. Swiss-Bernina, Inc., supra* at 257 n. 1.

**5.** The Court further notes that it appears defendant Purcell may have somewhat selectively determined what attorney-client communications on particular subjects should be disclosed to plaintiffs. Compare the production made by defendant (see Plaintiffs' Supplemental Exhibits, filed December 13, 1984), with the September 14, 1979 Memorandum (No. 5, page 3, above). Selective disclosure of materials on the same subject matter serves to waive the attorney-client privilege. *United States v. Jones,* 696 F.2d 1069, 1072 (4th Cir.1982).

to deter future *illegal governmental* conduct. *See, United States v. Janis,* 428 U.S. 433, 446, 96 S.Ct. 3021, 3028, 49 L.Ed.2d 1046 (1976), quoting *United States v. Calandra,* 414 U.S. 338, 347, 94 S.Ct. 613, 619, 38 L.Ed.2d 561 (1974). There is no governmental conduct involved here and, more importantly, there is no evidence that the documents and marketing materials were illegally acquired. The inaction of Old Pinehurst and Purcell, while knowing of Jerry Slade's possession of Old Pinehurst documents, suggests otherwise. Furthermore, there is no evidence to suggest that plaintiffs played any part in any wrongful conduct.

For the foregoing reasons, IT IS THEREFORE ORDERED that defendant Purcell's motion for a protective order is DENIED. The documents in plaintiffs' possession which came into their possession through Jerry Slade may be used as any other documents in this case. The Court will impose no sanctions in regard to this discovery dispute.