# United States Court of Appeals

**FOR THE DISTRICT OF COLUMBIA CIRCUIT**

---

Argued October 13, 2006        Decided February 9, 2007

No. 05-3126

IN RE: GRAND JURY

---

Appeal from the United States District Court
for the District of Columbia
(No. 05mc00197)

---

*Richard W. Beckler* argued the cause for appellants. With him on the briefs was *John F. Stanton*.

*Nicholas A. Marsh*, Attorney, U.S. Department of Justice, argued the cause for appellee the United States. With him on the brief was *Matthew C. Solomon*, Attorney.

*Stuart M. Gerson* argued the cause and filed the brief for appellee.

Before: SENTELLE, *Circuit Judge,* and EDWARDS and WILLIAMS, *Senior Circuit Judges*.

Opinion for the Court filed by *Circuit Judge* SENTELLE.

SENTELLE, *Circuit Judge*: The appellants, a corporate executive and his personal attorney, seek to have quashed a grand jury subpoena issued to the corporation's corporate counsel for testimony concerning communications made between the corporate counsel, and the client and his personal

attorney.  In the proceeding below the district court issued an order denying the motion to quash.  Because we agree that the communications at issue are not protected by the attorney-client privilege, we affirm the district court's order.  As this case involves an ongoing grand jury investigation the parties shall remain anonymous, and the factual details limited.

## I. Background

A corporation held a Board of Directors meeting on February 7, 2003.  At that meeting, appellant John Doe, the corporation's Senior Vice President for Business Development, recommended that the corporation participate in certain planned political activities.  The Board expressly adopted a political action plan providing that corporate money would be contributed in specific amounts to named federal political candidates.  Subsequently, in the summer of 2003, the corporation conducted an internal investigation of whether its past actions had violated federal campaign finance laws.  This internal investigation was undertaken by the corporation's law firm (hereinafter the "law firm"), and in particular one of the law firm's partners (hereinafter "corporate counsel").  In September 2003 a report resulting from that internal investigation, alleging possible federal election law violations, was submitted by the corporation to the Department of Justice (hereinafter "DOJ" or "government").

After receiving the report the DOJ commenced an investigation into allegations of election fraud at the corporation and on the part of several of the corporation's employees.  Pursuant to its investigation, the DOJ issued a subpoena to the corporation requesting documents related to, among other things, political contributions made by the corporation or any of its officers, directors, or employees.  The corporation continued to be represented by the law firm.  Appellant Doe in his capacity

as an executive of the corporation was also represented by the law firm but in addition retained his own personal attorney. After the DOJ issued its subpoena, the corporation and its corporate counsel entered into a Joint Defense Agreement ("JDA") with Doe and his personal attorney (hereinafter collectively "appellants"). The JDA provided for the exchange of communications and documents between the parties to the JDA and that such communications and documents would remain protected by the attorney-client privilege. Corporate counsel also served as the corporation's custodian of record and the principal point of contact with the government.

In response to the DOJ's subpoena, the corporation produced, *inter alia*, an unsigned copy of the minutes of the February 7, 2003, Board of Directors meeting. These minutes appeared to show that the political activities plan Doe put forth at the meeting included illegal corporate contributions to federal political candidates. The DOJ then requested additional information from the corporation regarding the Board of Directors meeting. In response to this request, corporate counsel sent a letter on December 1, 2004, to Doe's personal attorney with a copy of the February 7th unsigned Board Minutes attached, asking that Doe provide "[a]ny recollections or information" that he may have in order to address the DOJ's concerns. In reply Doe's personal attorney sent corporate counsel a fax which stated that enclosed was "a signed copy of the [February 7, 2003] minutes with [Doe's] recommendations attached." These "recommendations" were typed on a one-page document which read at the top "Board Meeting," "February 7, 2003," and "Assignment Recommendation." This "Assignment Recommendation" seemingly indicated that, contrary to the Board minutes, there were no approved recommendations. Therefore it was exculpatory as to Doe. According to an affidavit filed by corporate counsel in the district court, after corporate counsel received the fax he on three occasions had

conversations with Doe concerning the Assignment Recommendation. The first conversation occurred after corporate counsel contacted Doe and stated that the DOJ would want to know why the signed copy of the Board minutes and the Assignment Recommendation had not been previously identified and produced as responsive to the grand jury subpoena. Doe replied that only recently had he instructed his assistant to look at his personal copies of corporate minutes, which apparently had not been searched previously. Corporate counsel subsequently submitted the signed Board minutes and the Assignment Recommendation to the DOJ.

The DOJ then arranged to interview Doe. In the interim corporate counsel had his second conversation with Doe when he met with Doe and his personal attorney and informed Doe that during the interview the DOJ was likely to inquire as to why the Assignment Recommendation was produced so late. In reply Doe reiterated his prior explanation. Several days later, the DOJ informed corporate counsel that it believed that the Assignment Recommendation was not, as it had been represented to be, a contemporaneous record of the events that it described, and was therefore fraudulent. Corporate counsel then had his third conversation with Doe, at which time Doe stated that he could not remember the exact date of the document's preparation. Soon thereafter, Doe's personal attorney informed corporate counsel by telephone that the Assignment Recommendation was not made contemporaneously with the February 7, 2003 Board meeting but in fact had been prepared sometime in December 2004, i.e., the same time period when Doe stated that his assistant had conducted a search of his personal files.

Corporate counsel subsequently notified the DOJ that the Assignment Recommendation should not be considered a contemporaneous record of the February 7, 2003 Board meeting.

In response, the DOJ sought from corporate counsel the circumstances under which the document was obtained as well as all conversations corporate counsel had with the persons who had provided the document to him. Corporate counsel initially claimed attorney-client privilege but later relented after the government stated that under the circumstances it was its position that the crime-fraud exception to the privilege was applicable. The DOJ then interviewed Doe, in his personal attorney's presence, regarding the Assignment Recommendation, at which time Doe told the DOJ that the document had been created in December 2004 to replicate notes that he had made around the time of the Board meeting. Doe also acknowledged that he knew that the Assignment Recommendation would be provided to the grand jury in connection with its investigation. When confronted by the DOJ with his conflicting statements concerning the manner in which the document had been provided and represented to the government, Doe's personal attorney raised the attorney-client privilege, interjecting that any communications between Doe and corporate counsel were protected by the JDA and privileged. Soon thereafter the DOJ began an obstruction-of-justice investigation into the matter and served corporate counsel with a grand jury subpoena seeking information concerning his conversations with Doe on the Assignment Recommendation.

Corporate counsel filed a motion in district court seeking an order to quash the subpoena or in the alternative directing him to testify. Attached to the motion was corporate counsel's affidavit containing the substance of his conversations with Doe concerning the Assignment Recommendation. The motion sought a ruling on whether these conversations between corporate counsel and Doe were attorney-client privileged. Doe and his personal attorney intervened, filing a memorandum in support of the motion to quash in which they requested that the court, on grounds of attorney-client privilege, not only suppress

the subpoena but also exclude from discovery the Assignment Recommendation. After review of the parties' briefs, including a government *ex parte* affidavit, the district court held a hearing on the motion. The attorneys presented arguments but no testimony was taken. At the conclusion of the hearing the district court ruled that the Assignment Recommendation was a corporate document responsive to the grand jury subpoena and was not protected from disclosure by the attorney-client privilege. The court ruled further that the conversations between the appellants and corporate counsel concerning creation of the Assignment Recommendation were not protected from disclosure as the crime-fraud exception to the attorney-client privilege applied. The court also noted that the Joint Defense Agreement was a "contractual issue" that was not relevant to whether the crime-fraud exception applied.

## II. Analysis

Doe and his personal attorney now appeal the district court's decision. As they did in the proceeding below they seek to have quashed the subpoena issued to corporate counsel for his personal testimony and to have destroyed or returned to them any documents relating to "confidential communications" between them and corporate counsel.

The government asserts that our review of the district court's decision should be for abuse of discretion. *See In re Sealed Case*, 950 F.2d 736, 738 (D.C. Cir. 1991); *In re Sealed Case*, 754 F.2d 395, 399-400 (D.C. Cir. 1985). Appellants suggest, however, that we review questions of attorney-client privilege and/or the applicability of the crime-fraud exception *de novo*. *See In re Sealed Case*, 223 F.3d 778-79 (D.C. Cir. 2000) ("[Where] the application of the crime fraud exception turns on a pure question of law" we resolve the question *de novo*.). We need not decide between the two, however, as even under the

stricter standard favored by the appellants we uphold the district court's decision.

We observe as a starting point that "the public . . . has a right to every man's evidence." *United States v. Nixon*, 418 U.S. 683 (1974) (quoting, *inter alia*, *Branzburg v. Hayes*, 408 U.S. 665, 688 (1972); *United States v. Bryan*, 339 U.S. 323, 331 (1941)). In the pursuit of public responsibility, "the law vests the grand jury with substantial powers." *United States v. Mandujano*, 425 U.S. 564, 571 (1976) (collecting cases) ("Indispensable to the exercise of its power is the authority to compel the attendance and the testimony of witnesses . . . and to require the production of evidence.") (citations omitted). "When called by the grand jury, witnesses are thus legally bound to give testimony." *Id.* at 572.

The right of the public to every man's evidence is, of course, subject to "except[ion] for those persons protected by a constitutional, common-law, or statutory privilege." *Nixon*, 418 U.S. at 709 (citations omitted). The appellants assert that both the Assignment Recommendation and any conversations between corporate counsel and Doe concerning that document are protected from disclosure by the attorney-client privilege. According to them the Assignment Recommendation was provided to corporate counsel by Doe at corporate counsel's direction in anticipation of litigation and as such is a privileged document that was improperly disclosed to the DOJ by corporate counsel. They further argue that the conversations at issue were covered by the JDA, which they claim is an extension of the attorney-client privilege. Asserting that only the client can waive the attorney-client privilege, they state that neither of them gave any waiver of any sort to corporate counsel "to disclose privileged, confidential, or secret materials to the DOJ at any time."

The attorney-client privilege applies only if, *inter alia*, "the communication relates to a fact of which the attorney was informed . . . by his client . . . for the purpose of securing primarily either (i) an opinion on law or (ii) legal services or (iii) assistance in some legal proceeding." *In re Sealed Case*, 737 F.2d 94, 98-99 (D.C. Cir. 1984) (quoting *United States v. United Shoe Machinery Corp.*, 89 F. Supp. 357, 358-59 (D. Mass. 1950)). The district court held that the Assignment Recommendation was not protected by the attorney-client privilege as it was a corporate document responsive to a previous subpoena for production. *See Braswell v. United States*, 487 U.S. 99, 102 (1988) ("There is no question but that the contents of subpoenaed business records are not privileged."). The document bore the date of February 7, 2003. It was included in a fax to corporate counsel from Doe's personal attorney, at the back of a set of signed minutes of the Board meeting of the same date. Corporate counsel's initial fax to Doe's personal attorney stated that the Department of Justice, after reviewing subpoenaed documents, had some concerns about the Board Meeting, and corporate counsel was therefore seeking Doe's "assist[ance] in addressing DOJ's concerns," in particular concerning what Doe had "recommended" at the meeting. Doe's personal attorney's fax in reply to corporate counsel stated that it was "[i]n response to your request for additional information about [Doe's] recommendations at the February 7, 2003 . . . Board meeting" and that enclosed was "a signed copy of the minutes with [Doe's] recommendations attached . . . [which] should clearly delineate what he recommended to the Board and what the Board voted to do." Under these circumstances it is apparent that Doe and his personal attorney intended that the Assignment Recommendation assist corporate counsel in "address[ing] DOJ's concerns" by being forwarded to the DOJ along with the included signed copy of the Board minutes.

If the document had in fact been the corporate document it appeared to be, then, as the district court held, there would be no difficulty in upholding the district court's ruling. However, this appeal arises from the fact that the original appearance of the document may have been the result of a fraud upon the court. Nonetheless, it is not protected by attorney-client privilege. As we noted in *In re Sealed Case*, 877 F.2d 976 (D.C. Cir. 1989),

> [a]lthough the attorney-client privilege is of ancient lineage and continuing importance, the confidentiality of communications covered by the privilege must be jealously guarded by the holder of the privilege lest it be waived. The courts will grant no greater protection to those who assert the privilege than their own precautions warrant. We therefore agree with those courts which have held that the privilege is lost even if the disclosure is inadvertent.

*Id.* at 980 (internal quotation marks and citations omitted).

Here the disclosure of the document was more than inadvertent, its disclosure was actually the result of affirmative acts by the attorney and client now asserting the privilege. We therefore have no difficulty in holding that the privilege, if indeed it ever existed, has been waived. We therefore agree with the district court that the Assignment Recommendation is not protected by the attorney-client privilege.

The district court also found that Doe is not shielded by the attorney-client privilege from disclosure of his conversations with corporate counsel surrounding the creation of the Assignment Recommendation because of the crime-fraud exception to the privilege. Attorney-client communications are not privileged if they "are made in furtherance of a crime, fraud, or other misconduct." *In re Sealed Case*, 754 F.2d at 399. To overcome a claim of privilege, the government must "make a

prima facie showing of a violation sufficiently serious to defeat the privilege"; such a "violation is shown if it is established that the client was engaged in or planning a criminal or fraudulent scheme when it sought the advice of counsel to further the scheme"; and the government's burden of proof is satisfied "if it offers evidence that if believed by the trier of fact would establish the elements of an ongoing or imminent crime or fraud." *Id.* Here, the government has presented evidence, including the *ex parte* affidavit, that the Assignment Recommendation was a back-dated fraudulent document produced to mislead the government in connection with its ongoing grand jury investigation. Corporate counsel's affidavit submitted with his motion to quash reveals that following production of that document Doe told corporate counsel on at least three occasions that his secretary had found the document and that he did not know when it was created, even though he later admitted that he created it at the time the signed minutes were found in his files. We therefore agree that even if the conversations at issue were subject to the attorney-client privilege then a *prima facie* case has been made by the government that the crime-fraud exception applies to those conversations.

The appellants claim that both the Assignment Recommendation and the conversations they had with corporate counsel concerning that document are protected by the JDA. According to them the district court erred when it found that the JDA was not relevant because it was a "contractual issue" between the parties. They contend, and the government apparently does not dispute, that joint defense agreements give rise to an attorney-client privilege. We need not weigh in on the issue, however. Even if the JDA did give rise to the privilege, as noted above a *prima facie* case has been made that the crime-fraud exception applies to that privilege.

Appellants argue that even if the materials sought by the subpoena fall outside the attorney-client privilege because of the crime-fraud exception, the information sought by the subpoena is protected under the D.C. Rules of Professional Conduct. Noting that under those Rules an attorney may not reveal a client's "confidence or secret," *see* D.C. Rule 1.6(a)-(c), appellants claim that the information disclosed to the DOJ by corporate counsel concerning the Assignment Recommendation and the information sought by the DOJ in the grand jury fall into the category of either a confidence or a secret barred from disclosure notwithstanding application of the crime-fraud exception. Even assuming appellants are correct in arguing that the D.C. Rules cover this evidence, appellants have offered no authority for the proposition that an exclusionary remedy would apply. We doubt that one would. Given that the crime-fraud exception would expose the controverted evidence even in light of the common law attorney-client privilege, it would be odd beyond contemplation that a D.C. local bar rule could thwart the grand jury's access to the same evidence.

In short, we agree with the district court that the attorney-client privilege does not protect those conversations from being disclosed. Accordingly, the decision of the district court is

*Affirmed*.