**In re GRAND JURY SUBPOENA to [Name of Firm Redacted].**

No. 3:07–MC–28–W.

United States District Court, W.D. North Carolina, Charlotte Division.

May 4, 2007.

## MEMORANDUM AND ORDER

FRANK D. WHITNEY, District Judge.

THIS MATTER comes before the Court on the motion of [NAME OF FIRM REDACTED] [hereinafter "Movant" or the "law firm"] to quash a Grand Jury subpoena *ad testificandum* and *duces tecum* seeking information from an attorney about a client.[1]

Movant contends that the grand jury subpoena addressed to both the law firm and its shareholder-member [NAME OF ATTORNEY REDACTED] should be quashed because: (1) the subpoena was not properly served on the law firm since it was served on [NAME OF ATTORNEY REDACTED], who is not the firm's registered agent; (2) the subpoena seeks testimony and documents which contain "confidential information" under Rule 1.6 of the North Carolina Rules of Professional Conduct [hereinafter "N.C.R. Prof. Cond." or "Rules of Professional Conduct"];[2] and (3) federal prosecutors must first make a showing to the Court that they have complied with Rule 3.8(e) of the Rules of Professional Conduct before causing a grand jury subpoena to be served. The Court disagrees with Movant as to all three contentions and thus DENIES the motion to quash.

### Service on a Business Entity

■ Movant first asserts that a grand jury subpoena must be served on the law firm's registered agent, rather than one of its shareholder-members. The Government responds that the subpoena was properly served according to Fed. R.Crim. Proc. 17(d) on [NAME OF ATTORNEY REDACTED], who was the particular member of the law firm believed to have had personal knowledge of the transactions reflected in the documents sought by subpoena.[3]

1. The Court previously entered an Order in this matter without explanation as to its ruling to compel testimony and production of documents while the grand jury was then sitting. The Court issues this Memorandum and Order as a supplemental ruling to explain its earlier Order.

   Moreover, this Memorandum and Order is issued in two forms, one under seal and the other redacted and unsealed for precedent. In its brief, the Government asserts that it "has seen a rapid increase in the number of refusals by attorneys to comply with grand jury subpoenas in the last several years in the absence of a separate order from the Court." Government's Opposition to Motion to Quash and Memorandum of Law in Support at 17 n. 9. Additionally, since Movant filed this Motion to Quash, yet another law firm asserted under similar facts that it did not have to comply with a grand subpoena because of the Rules of Professional Conduct. A redacted and unsealed Memorandum and Order should prevent unnecessary re-litigation of these issues.

2. Title 27, N.C. Admin. Code, ch. 2.

3. While Fed.R.Crim.P. 6 governs grand jury procedure, Fed.R.Crim.P. 17 governs the issuance of any subpoena, whether grand jury or trial, under the Criminal Rules. Rule 17(d) reads:

   A marshal, a deputy marshal, or any nonparty who is at least 18 years old may serve a subpoena. The server must deliver a copy of the subpoena to the witness and must tender to the witness one day's witness-attendance fee and the legal mileage allowance. The server need not tender the attendance fee or mileage allowance when

The law firm is a professional association organized and existing under North Carolina law, and [NAME OF ATTORNEY REDACTED] is a named principal and shareholder of the association. Although another named principal and shareholder, [NAME OF REGISTERED AGENT REDACTED], is designated as the firm's registered agent for the purpose of accepting service of process, [NAME OF ATTORNEY REDACTED] accepted service of the subpoena on behalf of the law firm after discussing the purpose of the subpoena with the investigating agent and voiced no objections to doing so.

It is well-settled that a grand jury subpoena may effectively be served on a business entity through any of its officers, directors, or general managers. *In re Grand Jury Subpoenas Issued to Thirteen Corps.*, 775 F.2d 43, 46 (2d Cir.1985) ("A corporation may be served through an officer or agent explicitly or implicitly authorized to accept service of process."); *In re Electric & Musical Indus. Ltd., Middlesex England*, 155 F.Supp. 892 (S.D.N.Y.1957) ("[S]ervice upon a corporation may be made by delivering a copy of the subpoena to an officer or a managing or general agent of the corporation named.").[4] Indeed, federal law does not require that *any* kind of legal process be served exclusively on a business entity's registered

agent. For example, under the Federal Rules of Civil Procedure (which address the peculiarities of service upon business entities more directly than do the counterpart criminal rules), a business entity may be served by delivering the summons "to an officer, a managing or general agent, *or* to any other agent authorized by appointment or by law to receive service of process...." Fed.R.Civ.P. 4(h)(1) (emphasis added). Because shareholder-member [NAME OF ATTORNEY REDACTED] is unquestionably a general agent of the law firm, service of the grand jury subpoena on him was effective service upon the law firm.

*Confidentiality and Rule 1.6*

■ Movant next argues that Rule 1.6 prohibits the disclosure of confidential client information without a "court order." The Government responds that the law firm (1) misreads Rule 1.6 in that the Rule actually authorizes compliance with a grand jury subpoena because the subpoena is a lawful method of compulsion, and (2) even if the law firm has properly cited Rule 1.6, a grand jury subpoena is a "court order" within the meaning of that rule. The Court agrees with the Government that Rule 1.6, when properly construed, appropriately circumscribes a lawyer's duty of confidentiality and authorizes compliance with a grand jury subpoena.[5]

the United States, a federal officer, or a federal agency has requested the subpoena. Fed.R.Crim.P. 17(d). While Rule 17(d) forbids parties from serving subpoenas, "[o]nly the defendant, as a party, is prohibited from serving a subpoena. There is no prohibition on service by a government attorney or other government employee, or by the defense attorney." *Moore's Federal Practice* ¶ 617.05 (2006). In the instant case, a federal agent served the subpoena.

4. *See also In re Grand Jury Witnesses*, 92 F.3d 710, 713 (8th Cir.1996) ("It is irrelevant that the Witnesses are not the corporations' designated document custodians."); *Vaughan Furniture Co. v. Featureline Mfg., Inc.*, 156 F.R.D.

123, 126 (M.D.N.C.1994) (recognizing service on corporate employee rather than custodian of records); *United States v. Custodian of Records*, 743 F.Supp. 783, 787 (W.D.Okla.1990) (recognizing service on receptionist); *In re Vankoughnet*, 184 F.Supp. 819 (E.D.Mich. 1960) (recognizing service on union's secretary-treasurer).

5. The Court need not address the issue of whether a grand jury subpoena is a "court order" for purposes of Rule 1.6. While on one hand a grand jury subpoena appears to be a "court order" because it is issued by an officer of the Court and enforceable by contempt of Court, Fed.R.Crim.P. 17(g), on the

Rule 1.6 reads, in pertinent part:

(a) A lawyer shall not reveal information acquired during the professional relationship with a client unless ... the disclosure is permitted by paragraph (b).

(b) A lawyer may reveal information protected from disclosure by paragraph (a) to the extent the lawyer reasonably believes necessary:

(1) to comply with the Rules of Professional Conduct, *the law* or court order.

N.C.R. Prof. Cond. 1.6(a) & (b)(1) (emphasis added).[6] Thus a lawyer "may reveal" confidential information when "the law" so requires.

If Rule 1.6 excepts compliance with "the law" from the Rule's prohibition on disclosure, the question becomes whether a grand jury subpoena is a lawful act of compulsion. Throughout Anglo–American legal history, there is simply no dispute that no man or woman—whether lawyer or not—is shielded from grand jury compulsion, absent the claim of a well-recognized privilege under federal common law:

When called by the grand jury, witnesses are thus legally bound to give testimony. This principle has long been recognized. In *United States v. Burr*, 25 F.Cas. 38 (No. 14,692e) (CCD Va.1807), Mr. Chief Justice Marshall

drew on English precedents, aptly described by Lord Chancellor Hardwicke in the 18th century, and long accepted in America as a hornbook proposition: "The public has a right to every man's evidence." This Court has repeatedly invoked this fundamental proposition when dealing with the powers of the grand jury.

The grand jury's authority to compel testimony is not, of course, without limits. The same Amendment that establishes the grand jury also guarantees that "no person ... shall be compelled in any criminal case to be a witness against himself ..." The duty to give evidence to a grand jury is therefore conditional; every person owes society his testimony, unless some recognized privilege is asserted.

*United States v. Mandujano*, 425 U.S. 564, 572, 96 S.Ct. 1768, 48 L.Ed.2d 212 (1976) (citations omitted). Furthermore, "exceptions to the demand for every man's evidence are not lightly created nor expansively construed, for they are in derogation of the search for truth." *United States v. Nixon*, 418 U.S. 683, 710, 94 S.Ct. 3090, 41 L.Ed.2d 1039 (1974). Short of a federally recognized privilege, compliance with a grand jury subpoena is *the law* in the United States, thus trumping confidentiality obligations under Rule 1.6.[7] *Accord In re Grand Jury Subpoena to [Under Seal]*,

---

other hand a grand jury subpoena is a tool not of the court *per se* but of the independent grand jury which "belongs to no branch of institutional government." *United States v. Williams*, 504 U.S. 36, 47, 112 S.Ct. 1735, 118 L.Ed.2d 352 (1992).

**6.** Movant selectively quoted Rule 1.6(b)(1), excluding the controlling phrase "the law" *inter alia*: "to comply with ... court order." Motion to Quash Grand Jury Subpoena at 2, para 5 (ellipsis included in original Motion to Quash Grand Jury Subpoena). Excluding by ellipsis a critical portion of a rule, regulation or statute which a party or its counsel knows is likely controlling is at best disingenuous.

**7.** Although Movant does not explicitly assert either the attorney-client privilege or the attorney work product doctrine, such privileged communications or products are implicitly included within any lawyer's or law firm's attempt to quash a grand jury subpoena under client confidentiality concerns. *See, e.g.,* N.C.R. Prof. Cond. 1.6, cmt. 3 ("The confidentiality rule ... applies not only to matters communicated in confidence by the client but also to all information acquired during the representation, whatever its source."). While well-established privileges under federal common law do limit the scope of a grand jury subpoena, a lawyer or law firm may not merely assert that testimony or material is privileged and thereby not comply. Rather

Miscellaneous Nos. 5:04–MC–18, –19, –20 (E.D.N.C. Aug. 5, 2004) (Boyle, C.J.) ("[A North Carolina attorney] is required by law to respond to the grand jury subpoena and therefore may reveal the information under the exception in Rule 1.6(b)."); *In re Grand Jury*, 475 F.3d 1299, 1306 (D.C.Cir. 2007) (Sentelle, J., former member of the W.D.N.C. bench) (rejecting claim that the similar D.C. Bar Rule 1.6 prohibited disclosure of non-privileged information).

Because a grand jury subpoena is enforceable by contempt of court,[8] the lawyer not only "may reveal" confidential information under Rule 1.6(b) but necessarily *must* reveal the confidential information under threat of federal "fine or imprisonment, or both." 18 U.S.C. § 401(a). *See Coronado v. BankAtlantic Bancorp, Inc.*, 222 F.3d 1315, 1320 (11th Cir.2000) ("If recipient of a grand jury subpoena does not produce the evidence sought, the recipient that disobeyed the subpoena ... is in contempt, and may be fine and imprisoned."). Comment 13 to Rule 1.6 clearly shows that the North Carolina State Bar did not intend to place the lawyer in the untenable position of choosing between his or her license to practice and his or her liberty:

> the lawyer or law firm must "promptly" attempt to quash the subpoena and submit the testimony or the materials to the Court for *in camera, ex parte* review. See Fed.R.Crim.P. 17(c)(2) ("On a motion *made promptly,* the court may quash or modify the subpoena if compliance would be *unreasonable or oppressive.")* (emphasis added). The Court must review the assertion because federal law determines the scope, extent and applicability of a common law privilege under Fed.R.Evid. 501 as applicable to grand jury proceedings through Fed.R.Evid. 101(d)(2).
>
> The Court the following prophylactic rule to assist practitioners in 'establishes' promptly and timely asserting a privilege or seeking to quash a subpoena for unreasonableness or oppressiveness: Assuming service of the subpoena reasonably well in advance of the date

Other law may require that a lawyer disclose information about a client. Whether such a law supersedes Rule 1.6 is a question of law beyond the scope of these Rules. When disclosure of information acquired during the representation appears to be required by other law, the lawyer must discuss the matter with the client to the extent required by Rule 1.4 [regarding reasonable communication between a client and a lawyer]. *If, however, the other law supersedes this Rule and requires disclosure, paragraph (b)(1) permits the lawyer to make such disclosures as are necessary to comply with the law.*

*Id.* (italics added). Thus, when lawfully compelled, a lawyer may disclose non-privileged client confidences as necessary without fear of State Bar sanction.[9]

As the Government contends, public policy also directs this result. Lawyers should not be treated differently than any other professionals or institutions that also have a legal or ethical duty to protect non-privileged personal or confidential information. Otherwise, medical doctors, accountants, chiropractors, clergy, the media, financial institutions and others who

and time of compliance, no later than five (5) business days before date and time for compliance a lawyer or law firm may submit to chambers of the undersigned judicial officer a written summary of the purportedly privileged testimony with an analysis of why the testimony is privileged and/or all materials and documents purportedly privileged, Bates-stamped and indexed with a ledger setting forth the basis for the assertion of a privilege as to each item.

8. Fed.R.Crim.P. 17(g).

9. Nonetheless, reliance upon a state rule of professional conduct is no defense to federal contempt of court. *See e.g., Matter of Special April 1977 Grand Jury*, 581 F.2d 589 (7th Cir.1978) (state records must be produced even if state law prohibits disclosure).

hold personal confidences would be shielded from grand jury compulsion—a position that the courts have consistently rejected, including most recently in the high profile case of *In re Grand Jury Subpoena, Judith Miller*, 438 F.3d 1141 (D.C.Cir.2006), in which a New York Times reporter was held in contempt and jailed for 85 days for failing to reveal a confidential source in response to a grand jury subpoena.

### Federal Prosecutors' Duties Under Rule 3.8(e)

■ Movant lastly contends that the Court must pre-determine whether an attorney for the Government who causes or is involved in the issuance of a grand jury subpoena has complied with Rule 3.8(e) of the Rules of Professional Conduct before the subpoena is enforceable. The law firm does not assert there was a violation of Rule 3.8(e), only that judicial pre-screening is required. The Government responds that (1) failure to comply with a state rule of professional conduct cannot be a basis to quash a grand jury subpoena, and (2) Rule 3.8(e) is "necessarily unenforceable against federal prosecutors in fulfilling their responsibility to assist the grand jury in conducting a criminal investigation," or in effect unconstitutional as applied to federal prosecutors in their capacity as agents of the grand jury. Government's Opposition to Motion to Quash and Memorandum of Law in Support at 17–18. The Court finds that Rule 3.8(e) does not require judicial pre-screening, and, in any event, that a violation of Rule 3.8(e) cannot be a basis to quash a grand jury subpoena. Thus, the Court finds it unnecessary to reach the Government's second contention that Rule 3.8(e) is unenforceable against federal prosecutors.

Rule 3.8 provides, in pertinent part:

The prosecutor in a criminal case shall:

* * *

(e) not subpoena a lawyer in a grand jury or other criminal proceeding to present evidence about a past or present client, . . ., unless:

(1) the information sought is not protected from disclosure by any applicable privilege;

(2) the evidence sought is essential to the successful completion of an ongoing investigation or prosecution; and,

(3) there is no other feasible alternative to obtain the information; . . . .

N.C.R. Prof. Cond. 3.8(e). Conspicuously absent from Rule 3.8(e) is a requirement that the Court pre-screen grand jury subpoena applications for compliance with the mandates of the Rule, and an understanding of the history of Rule 3.8 explains why this is so. The North Carolina State Bar Rule is modeled after the American Bar Association (ABA) Model Rule of Professional Conduct 3.8, which until the mid–1990's required, in addition to the three criteria set out above, that "the prosecutor obtain[ ] prior judicial approval after an opportunity for an adversarial proceeding." *See generally Stern v. United States District Court for the District of Massachusetts*, 214 F.3d 4, 8–9 (1st Cir.2000) (detailing the evolution of ABA Rule 3.8). The ABA ultimately abandoned the "prior judicial approval" provision, however, after the Third Circuit held it to be an unconstitutional intrusion upon the independent workings of the grand jury. *See Baylson v. Disciplinary Bd.*, 975 F.2d 102 (3d Cir. 1992). Thus, when North Carolina adopted the revised Rules of Professional Conduct in 1997, it followed the lead of the ABA in omitting from Rule 3.8 any requirement of prior court approval before a subpoena could issue to another lawyer.[10]

Despite this textual and historical backdrop eliminating an *explicit* requirement of

---

**10.** North Carolina amended N.C.R. Prof. Cond. 3.8 again in 2003, without substantive change to the provisions governing subpoenas.

prior judicial approval, Movant still wants judicial pre-screening *implicitly* read into Rule 3.8(e). The effect of such a requirement would be to render meaningless long-established grand jury procedures—including the inherently self-executing nature of a grand jury subpoena under threat of contempt and the limited basis for quashing a validly issued subpoena as "unreasonable and oppressive" as provided in Rule 17(c)(2). A federal grand jury is at liberty to "compel the production of [non-privileged] evidence or the testimony of witnesses as it considers appropriate," *United States v. Calandra*, 414 U.S. 338, 343, 94 S.Ct. 613, 38 L.Ed.2d 561 (1974), and neither the grand jury nor its agents should be "saddle[d] ... with minitrials and preliminary showings [that] would assuredly impede its investigation and frustrate the public's interest in the fair and expeditious administration of the criminal laws." *United States v. Dionisio*, 410 U.S. 1, 17, 93 S.Ct. 764, 35 L.Ed.2d 67 (1973).

Therefore, Rule 3.8(e) is more appropriately construed as a limited cautionary instruction—admonishing prosecutors to take pause before causing a subpoena to be issued so as to ensure that "there is a genuine need to intrude into the client-lawyer relationship"[11]—and not intended to create any substantive rights or procedural hurdles that would thwart the subpoena process or fetter the grand jury's investigatory function. The introductory provisions to the North Carolina Rules of Professional Conduct support this construction, stating that "the purpose of the Rules can be subverted when they are invoked by opposing parties as procedural weapons" and disclaiming any implication that "an antagonist in a collateral proceeding or transaction has standing to seek enforcement of the Rule." N.C.R. Prof. Cond. 0.2[7]. Similarly, the implementing regulations to the McDade Act[12]—which is a federal statute that holds federal prosecutors accountable to the ethical rules of the state in which they practice—provide that the Act "should not be construed in any way to alter federal substantive, procedural, or evidentiary law." 28 C.F.R. § 77.1(b). Importantly, too, the scope and effect of Rule 3.8 must be read modestly so as to avoid potential conflict with the federal constitutional mandate that the grand jury be left "free to pursue its investigations unhindered by external influence or supervision." *Dionisio*, 410 U.S. at 17–18, 93 S.Ct. 764; *see also Williams*, 504 U.S. at 53, 112 S.Ct. 1735 (declining to recognize "a nonexistent duty of the grand jury" as "an [ethical] obligation of the prosecutor").

Two important corollaries follow from this understanding of Rule 3.8(e). The first corollary is that the remedy sought by Movant—quashal of the grand jury subpoena—will *never* be an appropriate remedy for a breach of protocol under Rule 3.8(e). As discussed above, the grand jury is functionally independent of the federal judiciary and not even subject to the supervisory jurisdiction of the federal courts. *Williams*, 504 U.S. at 47, 112 S.Ct. 1735. This Court has only a limited grant of authority under Rule 17(c)(2) under which to quash a grand jury subpoena—that being where "compliance would be unreasonable or oppressive"—and for reasons already explained, neither the Rules of Professional Conduct nor the McDade Act as it applies to federal prosecutors[13] supplement or supplant this narrowly tailored standard.

---

**11.** N.C.R. Prof. Cond. 3.8, cmt. 5.

**12.** 28 U.S.C. § 530B.

**13.** Indeed, the implementing regulations to the McDade Act specifically provide that a State ethics violation is not a "basis for ...

The second corollary is that federal prosecutors in this District may continue to seek evidence from attorneys through the mechanism of a grand jury subpoena without fear of being sanctioned for ethics violations. Unlike Rule 3.8(e), which requires only a modest and subjective self-assessment by the prosecutor before causing a grand jury subpoena to issue, the United States Department of Justice requires its prosecutors to exercise a greater degree of caution and obtain objective departmental approval of their decision. According to the United States Attorneys' Manual, the Assistant Attorney General for the Criminal Division "must first ... authorize[ ]" all subpoenas seeking information relating to an attorney's representation of a client. *See* United States Attorney's Manual § 9–13.410, ¶ A (Guidelines for Issuing Grand Jury or Trial Subpoena to Attorneys for Information Relating to the Representation of Clients).[14] In considering a request to approve the issuance of a subpoena to an attorney for client information, the Assistant Attorney General considers comparable criteria to those listed in Rule 3.8(e):

- The information sought shall not be protected by a valid claim of privilege.
- All reasonable attempts to obtain the information from alternative sources shall have proved to be unsuccessful.
- In a criminal investigation or prosecution, there must be reasonable grounds to believe that a crime has been or is being committed, and that

the information sought is reasonably needed for the successful completion of the investigation or prosecution. The subpoena must not be used to obtain peripheral or speculative information.

- In a civil case, there must be reasonable grounds to believe that the information sought is reasonably necessary to the successful completion of the litigation.
- The need for the information must outweigh the potential adverse effects upon the attorney-client relationship. In particular, the need for the information must outweigh the risk that the attorney may be disqualified from representation of the client as a result of having to testify against the client.
- The subpoena shall be narrowly drawn and directed at material information regarding a limited subject matter and shall cover a reasonable, limited period of time.

*Id.* § 9–13.410, ¶ C. Because the Assistant Attorney General for the Criminal Division, who is located at the headquarters of the Justice Department in Washington, is geographically and emotionally detached from the local investigation, the Assistant Attorney General's review is objective and dispassionate. If federal prosecutors comply with Justice Department policy and meet these comparable criteria, then those prosecutors have effectively complied with the requirements of Rule 3.8(e). Thus, federal prosecutors who comply with Jus-

---

excluding relevant evidence in any judicial ... proceeding." 28 C.F.R. § 77.5.

**14.** Failure of an attorney for the United States to obtain Assistant Attorney General approval before causing a grand jury subpoena to be served or enforced does not necessarily mean the attorney violated Rule 3.8(e) and, as discussed above, does not provide a basis to quash a subpoena. *See also* UNITED STATES

ATTORNEYS' MANUAL § 9–13.41–0 ¶ E (The guidelines on issuance of subpoenas on attorneys for client information "are not intended to, do not, and may not be relied upon to create any rights, substantive or procedural, enforceable at law by any party in any matter, civil or criminal, nor do they place any limitations on otherwise lawful investigative or litigative prerogatives of the Department of Justice.").

tice Department policy and obtain this Departmental-level review will find themselves in a safe harbor as to this Court's enforcement of Rule 3.8(e).

NOW THEREFORE IT IS ORDERED that Movant comply with the grand jury subpoena as originally ordered on March, 25 2007 (or as amended by the grand jury).