### IN RE: GRAND JURY SUBPOENA NO. 2013R00691-009

### DOCKET NO. 3:16-mc-00079-FDW-DCK

United States District Court,
W.D. North Carolina,
Charlotte Division.

Signed 08/16/2016

ORDER

Frank D. Whitney, Chief United States District Judge

THIS MATTER is before the Court on Movant law firm's Motion to Quash Grand Jury Subpoena 2013R00691-009.[1] (Doc. No.

1). The parties submitted written briefs and oral arguments to the Court, and the matter is ripe for disposition. For the reasons that follow, Movant law firm's Motion to Quash (Doc. No. 1) is DENIED.

## I. BACKGROUND

On January 28, 2016, the United States served Grand Jury Subpoena No. 2013R00691-009 upon a law firm ("Movant"). Movant maintains offices in North Carolina, South Carolina, and other locations outside the continental United States. (Doc. No. 1, p. 4). The subpoena sought the production of documents maintained by Movant related to real estate closing transactions relevant to an ongoing investigation. (Doc. No. 6, p. 1). Specifically, the subpoena requested production of "[a]ny and all documents, records, or files maintained by [Movant] regarding the closing of real estate transactions involving the purchase, sale, and/or quitclaim of properties" by and between certain companies and/or individuals. (Doc. No. 6, p. 8). Movant provided dual representation—i.e. to both the buyer(s) and seller(s)—in the subject real estate transactions. (Doc. No. 1, p. 3).

The subpoena initially called for production no later than March 15, 2016, but the United States permitted an extension of the production deadline until April 18, 2016. (Doc. No. 6, p. 1). In the time elapsed between service of the challenged subpoena upon Movant and Movant's filing of the pending motion, counsel for the parties engaged in "numerous and lengthy" discussions to alleviate Movant's concerns regarding production of the subpoenaed documents. Id. Movant's last communication with the United States prior to filing the pending motion indicated that Movant had

1. The Court notes that, because this is a grand jury matter, all other filings shall remain under seal until further Order by the Court. This written decision is singly unsealed for the purpose of publication.

compiled all responsive documents which would be produced after redaction. Id. However, on April 18, 2016—the production deadline—Movant filed the pending Motion to Quash, arguing that the challenged subpoena "seeks the production of privileged documents and is unreasonable and oppressive." Id. at 2.

Specifically, Movant asserts that the subpoena should be quashed on three general grounds: (1) the requested documents are protected by the attorney-client privilege and/or the work product doctrine; (2) compliance would require the prohibited disclosure of non-public private information; and, (3) the subpoena exceeds the scope of the federal grand jury's investigative authority by requesting documents relating to alleged crimes occurring outside the federal district in which the grand jury sits. (Doc. No. 1, pp. 2-4). On April 25, 2016, the Court conducted a hearing on this matter at which it entered an oral ruling denying Movant's motion. Because of the frequent recurrence of objections to grand jury subpoenas encompassed by the instant motion, however, the Court now memorializes its oral ruling with this published opinion.

## II. LEGAL STANDARD

■ The investigative power of the grand jury is necessarily broad if its public responsibility is to be adequately discharged. Branzburg v. Hayes, 408 U.S. 665, 700, 92 S.Ct. 2646, 33 L.Ed.2d 626 (1972); Costello v. United States, 350 U.S. 359, 364, 76 S.Ct. 406, 100 L.Ed. 397 (1956). The United States Supreme Court has summarized the role and importance of the grand jury:

> [T]he role of the grand jury as an important instrument of effective law enforcement necessarily includes an investigatory function with respect to determining whether a crime has been committed and who committed it. . . . When the grand jury is performing its investigatory function into a general problem area . . . society's interest is best served by a thorough and extensive investigation. A grand jury investigation is not fully carried out until every available clue has been run down and all witnesses examined in every proper way to find if a crime has been committed.

Branzburg, 408 U.S. at 701–702, 92 S.Ct. 2646 (internal citations omitted). A grand jury's ability to procure information is "widely drawn." United States v. Calandra, 414 U.S. 338, 345, 94 S.Ct. 613, 38 L.Ed.2d 561 (1974). Therefore, courts have historically allowed grand juries considerable latitude when conducting criminal inquiries. See id. at 343, 94 S.Ct. 613. However, a grand jury's subpoena power is obviously not unlimited. Id. at 347, 94 S.Ct. 613. One such limit is the prohibition on a grand jury, itself, violating the assertion of a valid privilege. Id. at 346, 94 S.Ct. 613.

■ "The attorney-client privilege is the oldest of the privileges for confidential communications known to the common law." Upjohn v. United States, 449 U.S. 383, 389, 101 S.Ct. 677, 66 L.Ed.2d 584 (1981). The Fourth Circuit has adopted the "classic" test for determining the existence of the attorney-client privilege. United States v. Jones, 696 F.2d 1069, 1072 (4th Cir.1982) (per curiam). As employed, application of the privilege requires that:

> (1) the asserted holder of the privilege is or sought to become a client; (2) the person to whom the communication was made (a) is a member of the bar of a court, or his subordinate and (b) in connection with this communication is acting as a lawyer; (3) the communication relates to a fact of which the attorney was informed (a) by his client (b) without the presence of strangers (c) for the purpose of securing primarily either (i) an opinion on law or (ii) legal services or (iii) assistance in some legal proceeding,

and not (d) for the purpose of committing a crime or tort; and (4) the privilege has been (a) claimed and (b) not waived by the client.

Id. (adopting the test as articulated by United States v. United Shoe Machinery Corp., 89 F.Supp. 357, 358–59 (Mass. 1950)).

■ If the privilege applies, confidential communications between lawyer and client are completely protected from disclosure. Hawkins v. Stables, 148 F.3d 379, 383 (4th Cir.1998). However, the attorney-client privilege "is to be narrowly construed" and "recognized 'only to the very limited extent that ... excluding relevant evidence has a public good transcending the normally predominant principle of utilizing all rational means for ascertaining truth.'" Id. (quoting Trammel v. United States, 445 U.S. 40, 50, 100 S.Ct. 906, 63 L.Ed.2d 186 (1980)). This limitation is necessary because of the impediment that the privilege imposes upon the full and free discovery of the truth. See id. As such, when the privilege applies, it does so only to "[c]onfidential disclosures by a client to an attorney made in order to obtain legal assistance." Fisher v. United States, 425 U.S. 391, 403, 96 S.Ct. 1569, 48 L.Ed.2d 39 (1976). "The burden is on the proponent of the attorney-client privilege to demonstrate its applicability." Hawkins, 148 F.3d at 383 (quoting Jones, 696 F.2d at 1072).

■ Distinct from the attorney-client privilege, the work product doctrine belongs to the attorney and confers a qualified privilege on documents prepared by an attorney in anticipation of litigation. Hickman v. Taylor, 329 U.S. 495, 509–14, 67 S.Ct. 385, 91 L.Ed. 451 (1947). Generally, in determining whether a document has been prepared "in anticipation of litigation," most courts look to whether or not the document was prepared because of the prospect of litigation. See Nat'l Union Fire Ins. Co. of Pittsburgh, Pa. v. Murray Sheet Metal Co., Inc., 967 F.2d 980, 984 (4th Cir.1992). "The prospect of litigation" refers to whether the document's preparer "faces an actual claim or a potential claim." Id. Documents prepared in anticipation of litigation contrast with "materials prepared in the ordinary course of business or pursuant to regulatory requirements or for other non-litigation purposes," the latter of which do not enjoy the protection of work product. Id. As with attorney-client privilege, the party invoking the protection of the work product doctrine bears the burden of demonstrating its applicability. Solis v. Food Employers Labor Ass'n, 644 F.3d 221, 232 (4th Cir.2011).

## III. DISCUSSION

Because Movant's second and third arguments, as presented, are most easily dispensed with, the Court will address Movant's objections in reverse order. The Court, therefore, turns first to Movant's "breadth of scope argument."

### A. Scope of Grand Jury's Authority

■ Movant correctly points out that jurisdictional limitations on a grand jury's authority exist. (Doc. No. 1, p. 4). However, Movant then extends this principle to reach the inexplicable and unsupported conclusion that "only those real estate closing files involving conduct occurring within the Western District of North Carolina are properly the subject of any investigation by the grand jury within that District, and therefore subject to subpoena." (Doc. No. 1, p. 4). While Movant appears to have waived or withdrawn this objection at oral argument, the Court will nonetheless address it here.

■ Grand juries generally enjoy wide latitude in the conduct of their investigations but their jurisdiction is limited to investigate offenses which fall within its venue. See Blair v. United States, 250 U.S. 273, 282-83, 39 S.Ct. 468, 63 L.Ed. 979

(1919); see also Sullivan v. United States, 348 U.S. 170, 184, 75 S.Ct. 182, 99 L.Ed. 210 (1954). However, this jurisdictional limitation does not provide grounds for potential witnesses to challenge their subpoenas because grand juries need not conclusively determine venue as a threshold matter. Blair, 250 U.S. at 282–83, 39 S.Ct. 468. Rather, grand juries "have authority and jurisdiction to investigate the facts in order to determine the question whether the facts show a case within their jurisdiction." Id. at 283, 39 S.Ct. 468. The right of a grand jury to inquire into events occurring in districts outside the one in which it sits is not subject to contest on the grounds that the grand jury lacks venue to pursue an investigation. Id.; see also In re May 1972 San Antonio Grand Jury, 366 F.Supp. 522, 530 (W.D.Tex.1973).

Experience counsels that, for many federal cases, venue will lie in more than one district. Each district in which venue lies may independently investigate an offense. See 18 U.S.C. § 3237. Movant admits that the Western District of North Carolina possesses the requisite nexus to the underlying case for venue to lie in this district. (Doc. No. 1, p. 4). Given that venue is proper here, Movant cites no authority or rule, and the Court is aware of none, that would support the contention that this grand jury acted beyond its jurisdictional authority. So long as it is related to the conduct establishing venue in this district, a Western District of North Carolina grand jury may investigate criminal activity that occurred in any other state or territory of the United States or anywhere else in the world.[2]

## B. Disclosure of Non-public Private Information

■ Again, Movant appears to have waived this objection at oral argument, but the Court will address it on the merits as it is presented in Movant's written motion. Movant asserts that it is prohibited by 15 U.S.C. § 6802 from disclosing non-public private information that falls within the scope of information sought by the subpoena. Movant then seemingly demands a court order pursuant to Rule 17(c)(3) of the Federal Rules of Criminal Procedure requiring it to comply, if it must, with the subpoena. (Doc. No. 1, p. 3). While the Court is unable to discern any logical connection between this argument and the facts presented, section 6802 clearly provides no basis for quashing the subpoena in this case.

First, 15 U.S.C. § 6802 governs financial institutions. Law firms, such as Movant, do not fall within the statutory definition of "financial institution" as intended by § 6802.[3] See 15 U.S.C. 6809; 12 U.S.C.

---

**2.** Even this typically required connection between the venue-generating criminal conduct and the conduct under grand jury investigation may be rendered unnecessary where Congress has extended extraterritorial jurisdiction. See United States v. Passaro, 577 F.3d 207, 212 (4th Cir.2009) (holding that provisions of the USA PATRIOT Act, 18 U.S.C. § 7 (2006), extended federal criminal jurisdiction to crimes occurring in federal enclaves with no connection to any domestic venue—such as overseas U.S. military bases and the high seas).

**3.** The term "financial institution" means any institution the business of which is engaging in financial activities as described in section 1843(k) of title 12. 12 U.S.C. § 1843(k)(4), for example, enumerates "activities that are financial in nature" as (a) lending, exchanging, transferring, investing for others, or safeguarding money or securities; (b) insuring, guaranteeing, or indemnifying against loss, harm, damage, illness, disability, or death, or providing and issuing annuities, and acting as principal, agent, or broker for purposes of the foregoing, in any State; (c) providing financial, investment, or economic advisory services, including advising an investment company (as defined in section 3 of the Investment Company Act of 1940 [15 U.S.C. 80a–3]); (d) issuing or selling instruments representing interests in pools of assets permissible for a bank to hold directly; (e) un-

§ 1843. Second, Rule 17(c)(3) only applies to subpoenas issued "[a]fter a complaint, indictment, or information is filed." Fed. R. Crim. P. 17. No charging document has been filed in this case, rendering Rule 17(c)(3) inapposite. Accordingly, this objection fails to provide a basis for quashing the subpoena.

### C. Privilege

 Movant's assertions of privilege fare no better than its first two arguments. First, and perhaps most critically, Movant fundamentally conflates the ethical duty of confidentiality with common law privilege. A lawyer's ethical duty of confidentiality always applies to client communications acquired during the representation of that client but, standing alone, never justifies non-compliance with a valid grand jury subpoena. In re Grand Jury Subpoena, 533 F.Supp.2d 602, 606 (W.D.N.C.2007); In re Grand Jury, 475 F.3d 1299, 1306 (D.C.Cir.2007); see also ABA Model Rules of Prof'l Conduct R. 1.6 cmt. 3; N.C. Rules of Prof'l Conduct R. 1.6(b)(1). Conversely, privilege may completely shield certain evidence from disclosure, United States v. Mandujano, 425 U.S. 564, 572, 96 S.Ct. 1768, 48 L.Ed.2d 212 (1976), but rarely, if ever, applies to real estate closing files and other documents and communications related to the underlying real estate transaction.

 Thus, real estate closing files and related documents, while protected by the ethical duty of confidentiality at least until made public by filing or other action, are virtually never protected by the attorney-client privilege precisely because such documents are prepared for the purpose of disclosure. Similarly, the work product doctrine is inapplicable to documents that are not prepared in anticipation of litigation as is generally the case for real estate closing files. The Court shall now examine more closely the applicability of these two common law privileges.

### 1. Attorney-Client Privilege

 The Court finds that Movant fails in two respects to demonstrate that the information under subpoena was intended to be confidential. First, the subpoenaed documents are real estate closing files. (Doc. No. 6). Second, Movant is admittedly in a position of dual representation. (Doc. No. 1, p. 3). The Court notes that, while it will address both of these bases for its holding, either of them, independently, would suffice to determine that attorney-client privilege does not protect the subpoenaed communications from disclosure before the grand jury.

 Attorney-client privilege attaches only to communications that were, and are, intended by the client to be kept confidential indefinitely. Hawkins, 148 F.3d at 383–84. Indeed, the Fourth Circuit has described the very "essence" of the attorney-client privilege as the client's intention that the communication remain confidential. In re Grand Jury Proceedings, 727 F.2d 1352, 1355–56 (4th Cir.1984). In stark contrast to the intention of confidentiality required for privilege to apply, real estate closing files are intended to be disclosed to

derwriting, dealing in, or making a market in securities; (f) engaging in any activity that the Board has determined, by order or regulation that is in effect on November 12, 1999, to be so closely related to banking or managing or controlling banks as to be a proper incident thereto (subject to the same terms and conditions contained in such order or regulation, unless modified by the Board); (g) engaging,

in the United States, in any activity that—(i) a bank holding company may engage in outside of the United States; and (ii) the Board has determined, under regulations prescribed or interpretations issued pursuant to subsection (c)(13) (as in effect on the day before November 12, 1999) to be usual in connection with the transaction of banking or other financial operations abroad.

third parties, as evidenced by, for example, the contents of the files themselves—i.e. documents necessary to effectuate the consummation of real estate transactions such as mortgage commitments, contracts, and financial statements. See Suntrust Mortgage v. Busby, 2010 WL 1052280 * 1 (W.D.N.C. March 19, 2010) (Howell, M.J.).

A client communication made for the purpose of effectuating a real estate closing inherently must be made in contemplation of ultimate public disclosure. Therefore, no intention of confidentiality, and thus no privilege, exists. U.S. v. (Under Seal), 748 F.2d 871, 875 (4th Cir.1984). This excludes from protection even "the details underlying the data which was to be published." In re Grand Jury Proceedings, 727 F.2d at 1356.

▮ Furthermore, it is fundamental that the holder of a purported privilege may, through any divulgence of the subject confidences, waive or destroy a claim to privilege. See Hunt v. Blackburn, 128 U.S. 464, 470–71, 9 S.Ct. 125, 32 L.Ed. 488 (1888). In real estate transactions, such public divulgence clearly occurs, at the latest, upon recordation at closing. Even if it could be argued, which Movant does not, that a client communication made in connection with a real estate closing was intended to remain confidential indefinitely, the public filings at closing would eviscerate the client's ability to later protect that communication or its underlying details via privilege. This conclusion is further bolstered in the instant case by the fact that Movant provided dual representations in the subject real estate transactions.

▮ If a client's communications to his attorney are made for the purpose, or with the expectation, of being relayed to a third party, there is neither a subjective, nor objectively reasonable, intention of confidentiality. See (Under Seal), 748 F.2d at 875. In such circumstances, no attorney-client privilege exists. Id. at 876 (finding that a client loses the right to assert attorney-client privilege as to the subject matter of communications once client authorizes attorney to perform services demonstrating client's intent to have his communications published); see also N.C. Rules of Prof'l Conduct R. 1.7, cmt 30 (explaining that the prevailing rule that, as between commonly represented clients, the privilege does not attach). Because the client's intent with respect to confidentiality is determinative of the existence of privilege, courts frequently discern the client's intent by looking to whether the services that the attorney was employed to provide would reasonably be expected to entail publication of the client's communications. (Under Seal), 748 F.2d at 875.

Here, the Court finds informative not only the type of services Movant performed but also the manner in which the services were provided. The Court has already discussed the attorney-client privilege's general inapplicability to communications made in connection with real estate transactions. These same principles are particularly true where, as is common in North Carolina, closing attorneys represent both the buyer and seller in a single transaction. Because clients contemplate real estate transactions before approaching closing attorneys, the attorney may be said to be employed to "convey information to third parties rather than to provide legal advice for the client's own guidance." (Under Seal), 748 F.2d at 875. Indeed, dual representations are commonplace in real estate transactions precisely because both sides intend the attorney to act as a repository of information, facilitate the exchange of that information between the parties, and thereby catalyze the deal's execution.

While attorneys performing this function undoubtedly owe each side some ethical duty of confidentiality, privilege is far narrower in its application. The Court finds

that both the nature and type of services provided by an attorney in a dual representative capacity in a real estate transaction would not only reasonably, but necessarily, be expected to entail publication of a client's communications. Therefore, no attorney-client privilege exists in such circumstances.

### 2. Work Product Doctrine

 Neither does the work-product doctrine prevent disclosure of the subpoenaed files. The Court finds that the subpoenaed documents were not made, created, or prepared in anticipation of litigation. In this case, there is no evidence whatsoever that the subject real estate closing files or other related documents were prepared while Movant faced actual or potential claims. Rather, the Court finds that the preparation of the files at issue here falls squarely within the realms of the ordinary course of business or other non-litigation purposes. The work product doctrine is, therefore, inapplicable. Accordingly, no privilege exists in this case and this objection, too, fails to justify quashing the grand jury subpoena.

### IV. CONCLUSION

In sum, no privilege shielding the subpoenaed real estate closing files and related documents from production exists. The ethical duty of confidentiality, to the extent it applies here, is necessarily subordinate to the legal obligation to comply with a properly issued grand jury subpoena. Movant has failed to demonstrate any other grounds for quashing the challenged grand jury subpoena.

IT IS, THEREFORE, ORDERED that Movant law firm's Motion to Quash Grand Jury Subpoena 2013R00691-009 (Doc. No. 1) is **DENIED.**

IT IS FURTHER ORDERED that all other filings in this matter shall remain **SEALED** until further Order by the Court. This written decision is **UNSEALED** solely for the purpose of publication.

**IT IS SO ORDERED.**